1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   FIDELITY NATIONAL TITLE                No.  2:13-cv-02030-KJM-AC
     COMPANY,
12
                 Plaintiff,
13                                          ORDER

           v.
14
     U.S. SMALL BUSINESS
15   ADMINISTRATION; PLACER COUNTY
     ENVIRONMENTAL HEALTH; ALLEN R.
16   FRUMKIN; FREDERICK W. HODGSON;
     LINDA HODGSON; and DOES 1 through
17   20, inclusive,

18               Defendants.

19

20

21          This matter comes before the court on defendants' motion to amend the answer

22   and assert a counterclaim, filed on December 18, 2013, and defendants' motion to join parties,

23   filed on December 19, 2013.  The court submitted the matter without hearing on January 13,

24   2014.  For the following reasons, defendants' motions are hereby GRANTED.

25   I.     BACKGROUND

26          The subject of the interpleader before the court is the surplus proceeds from a non-

27   judicial foreclosure sale of property in Kings Beach, California.  Plaintiff in the interpleader,

28   Fidelity National Title Company ("Fidelity"), "was the duly appointed trustee of the now-

1    foreclosed deed of trust . . . for the [p]roperty." (Notice of Removal of Action Pursuant to 28

2    U.S.C. § 1444 ("Notice of Removal"), Ex. A at 6, ECF No. 1.)[1]  Defendants in the interpleader,

3    Frederick and Linda Hodgson ("the Hodgsons"), allege that they "are and were the equitable

4    owners of real property" in Kings Beach, California, prior to the non-judicial foreclosure sale on

5    November 16, 2012.  (Mot. To Amend Answer of Defs. to Compl. in Interpleader for Surplus

6    Proceeds of Trustee's Sale ("Mot. to Amend"), Ex. 1 ¶ 1, ECF No. 8; Notice of Removal, Ex. A

7    at 7.)  The Hodgsons and the additional defendants in this action, U.S. Small Business

8    Administration ("SBA"), Placer County Environmental Health and Allan R. Frumkin, each

9    "submitted . . . written claims of entitlement to the remaining surplus foreclosure proceeds."

10   (Notice of Removal, Ex. A at 8.)

11        On January 15, 2013, the Hodgsons filed a complaint in Placer County against

12   East Bay Investors, LLC ("EBI"), asserting six claims related to the mortgage and the foreclosure.

13   (Mem. P.&A. of Fidelity Nat'l Title Co. in Opp'n to Mot. Of Defs. Frederick W. Hodgson and

14   Linda Hodgson to Amend Answer and Assert Countercl. ("Opp'n") 3:2-7, ECF No. 14.)  Those

15   claims were: (1) breach of contract, (2) fraud, (3) intentional infliction of emotional distress, (4)

16   negligent misrepresentation, (5) violations of California Business and Professions Code section

17   17200, and (6) wrongful foreclosure.  (Notice of Removal, Ex. A at 36.)  EBI is a limited liability

18   company, which the Hodgsons allege was formed "for the sole purpose of purchasing [the

19   Hodgsons'] note, deed of trust and other existing loan documents pertaining to the [Kings Beach]

20   property."  (Mot. to Amend, Ex. 1 ¶¶ 7, 9.)

21        While the posture of the state court proceeding is not entirely clear, there

22   apparently have been several bankruptcy filings, both before and after the home was foreclosed

23   on in November 2012.  (*Id.* ¶ 101-104; Opp'n at 3:13-4:1.)  Plaintiffs allege in the proposed

24   amended complaint that "[w]hile the automatic stay [pursuant to the Bankruptcy Code] was in

25   place as a result of the second filing, [c]ounterdefendants foreclosed on the [p]roperty . . . ."

26

---

27       [1] Exhibit A in the Notice of Removal contains the entire file from the interpleader in state court, with no numbered Exhibit pages.  The court thus cites to the page number assigned on the

28   court's docket.

(Mot. to Amend, Ex. 1 ¶ 103.)  EBI, defendant in the Hodgsons' state court proceeding, attempted to remove the state action to an adversary proceeding in bankruptcy, but the case was remanded to state court.  (Opp'n at 3:16-19; Request for Judicial Notice ("RJN"), Exs. C & D, ECF No. 15.)  At this point, it appears the state case is still pending.  (Opp'n at 4:2-4 (". . . [Fidelity] understands that the Placer County Action is currently pending and active.").)

On July 18, 2013, Fidelity sent a letter to the Hodgsons informing them that Fidelity was to disburse the surplus proceeds to a creditor, SBA.  (Notice of Removal, Ex. A at 9.)

On July 28, 2013, Frederick Hodgson faxed a letter to Fidelity indicating he would "continue to support options to correct those wrongfull [sic] actions of Fidelity National Title Company."  (*Id*. at 87.)

On August 14, 2013, Fidelity filed an action in interpleader in Placer Superior Court against SBA, Placer County Environmental Health, Allan R. Frumkin, and the Hodgsons.  (*Id*. at 5.)  Fidelity requested that the court order the parties "to litigate their respective claims vis-a-vis each other and their rights to the surplus foreclosure proceeds."  (*Id*. at 11.)  On September 30, 2013, SBA removed the interpleader to federal district court, based on 28 U.S.C. § 1444.  (Notice of Removal, ECF No. 1.)  On October 25, 2013, Fidelity filed in this court a notice of default judgment in the state interpleader action against Placer County Environmental Health.  (Notice of Entry of Default in State Court Action, ECF No. 4.)  On October 30, 2013, the Hodgsons filed an answer to the complaint in interpleader, but did not assert a counterclaim.  (Answer to Compl. in Interpleader for Surplus Proceeds of Trustee's Sale ("Answer"), ECF No. 5.)

On December 18, 2013, the Hodgsons filed a motion to amend to assert compulsory counterclaims, including six claims against Fidelity and four third parties, as well as one claim against an additional third party.  (Mot. to Amend, ECF No. 8.)  The following day, The Hodgsons filed a motion to join EBI, John C. Rogers ("Rogers"), Ferrari Investments, Inc. ("Ferrari Investments"), David J. Ferrari ("Ferrari"), and Bank of the West, as necessary parties to the counterclaim.  (Mot. to Join Necessary Parties ("Mot. to Join"), ECF No. 9.)

/////

1           The Hodgsons allege that Ferrari, "the managing member of Ferrari

2 Investment[s]," and Ferrari Investments, "a limited liability company . . . in Placer, California,"

3 "ha[ve] been actively attempting to purchase [the Kings Beach] [p]roperty since at least the year

4 2000."  (Mot. to Amend, Ex. 1 ¶¶ 5, 6.)

5           The Hodgsons claim that Bank of the West, their "original lender and beneficiary

6 of the deed of trust," (*id*. ¶ 10) "disclose[d] their private nonpublic personal information regarding

7 their [n]ote and other existing loan documents to . . . [inter alia] Ferrari, Rogers, Ferrari

8 Investments, and EBI" (*id*. ¶ 11).

9           Fidelity is a named defendant in the Hodgsons' complaint because it "was acting

10 as and is the agent of . . . Ferrari, Rogers, Ferrari Investments, and EBI."  (*Id*. ¶ 15.)

11           The general fact pattern at issue in the defendants' complaint is as follows.  The

12 Hodgsons allege that Fidelity and the parties to be joined were involved in a conspiratorial chain

13 of events resulting in the parties' "fraudulently filing and recording . . . false instruments and

14 converting the [Kings Beach] [p]roperty."  (*Id*. ¶ 1.)  They claim that "EBI was organized . . . by

15 . . . Rogers," and that "Ferrari, Rogers, and Ferrari Investments collaborated and conspired with

16 each other for the purpose of making a malevolent plan to steal [the Hodgsons'] [p]roperty . . .

17 after [the Hodgsons] rejected . . . Ferrari Investments and Ferrari's latest offer to purchase the

18 property."  (*Id*. ¶ 9.)  They further allege that "[c]ounterdefendants formed EBI for the sole

19 purpose of purchasing [the Hodgsons'] note, deed of trust and other existing loan documents

20 pertaining to the [Kings Beach] property."  (*Id*.)  Indeed, the Hodgsons allege, "Ferrari, Rogers,

21 and Ferrari Investments . . . contact[ed] . . . Bank of the West and . . . purchase[d] [the

22 Hodgsons'] note, deed of trust and other existing loan documents.  Thereafter, despite [the

23 Hodgsons'] not being in default, in concert with . . . Fidelity, foreclosed on [the Kings Beach]

24 [p]roperty . . . ."  (*Id*.)  They further "allege that they became aware of . . . fatal defects within the

25 [i]nstrument(s) on or about February 1st, 2013."  (Id. ¶ 57.)

26           On January 3, 2014, Fidelity filed a Request for Judicial Notice in support of its

27 Opposition.  (RJN.)

28 /////

4

1  II.      JUDICIAL NOTICE

2           As a preliminary matter, the court grants plaintiff's request for judicial notice of

3  documents regarding the state court proceeding.  FED. R. EVID. 201; *Harris v. Cnty. of Orange*,

4  682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of

5  public record, including documents on file in federal or state courts.") (internal quotations

6  omitted).  Because each exhibit in Fidelity's request is a document filed with a federal or state

7  court pertaining to this matter, and defendants have not opposed the motion, the court grants the

8  motion in its entirety.  (RJN at 2:11-3:13.)

9  III.     LEGAL STANDARD

10          Federal Rule of Civil Procedure 15(a)(2) states "[t]he court should freely give

11 leave [to a party to amend its pleading] when justice so requires," and the Ninth Circuit has

12 "stressed Rule 15's policy of favoring amendments." *Ascon Properties, Inc. v. Mobil Oil Co*.,

13 866 F.2d 1149, 1160 (9th Cir.1989).  "In exercising its discretion 'a court must be guided by the

14 underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleading

15 or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987) (quoting

16 *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981)).

17          However, "the liberality in granting leave to amend is subject to several

18 limitations.  Leave need not be granted where the amendment of the complaint would cause the

19 opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or

20 creates undue delay." *Ascon Properties*, 866 F.2d at 1160 (internal citations omitted).  "Without

21 a showing of prejudice, bad faith, or futility, delay on its own is not enough to justify denial of a

22 motion to amend." *Onions Etc., Inc. v. Z & S Fresh, Inc*., 1:09-CV-00906-OWW, 2011 WL

23 2433354 (E.D. Cal. June 13, 2011) (citing *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir.1999)).

24          However, futility of amendment can, by itself, justify the denial of a motion for

25 leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  A court may deny leave if

26 it cannot acquire jurisdiction. *Union Pac. R.R. Co. v. Coast Packing Co*., 236 F. Supp. 2d 1130,

27 1137 (C.D. Cal. 2002) (". . . [A]mendment would be futile in light of our conclusion that we lack

28 jurisdiction . . . .").

1          The parties mistakenly refer to the claims asserted by the Hodgsons as "a

2   counterclaim" in the singular.  (Opp'n at 2:13; Mot. to Amend 1:27-28.)  In fact, the Hodgsons

3   have moved to assert seven causes of action, which they seek to amend as a single "compulsory

4   counterclaim" to the instant action.  (Mot. to Amend 2:17.)  However, each cause of action

5   constitutes a separate claim, and only those claims against the counterclaimants' "opponent" fall

6   under Rule 13 as counterclaims.  *Union Paving Co. v. Downer Corp*., 276 F.2d 468, 470 (9th Cir.

7   1960) ("Rule 13(a) provides that any causes of action which a party has against his opponent and

8   which arise out of the same transaction or occurrence as the opponent's claim must be pleaded as

9   counterclaims in a federal action.").

10          The seventh cause of action for negligence is asserted against only Bank of the

11   West.  (Mot. to Amend, Ex. 1 at 30:24-26.)  Because Bank of the West is not an "opponent" in

12   the instant action, this claim is not a counterclaim and will be addressed separately below.  *Union*

13   *Paving Co*., 276 F.2d at 470.

14          Plaintiff asserts three arguments in opposition to defendant's motion to amend: (1)

15   the motion is untimely; (2) defendants filed with unreasonable delay; and (3) granting the motion

16   would unfairly prejudice the plaintiff.  (Opp'n at 4-5.)  Plaintiff asserts that because defendants'

17   proposed counterclaim is compulsory, the motion is untimely.  (*Id*. at 4.)  Because plaintiff's first

18   two arguments are one and the same, they will both be addressed in the court's consideration of

19   undue delay.

20          However, because any lack of subject matter jurisdiction would render amendment

21   futile, the court will address (1) its subject matter jurisdiction over the counterclaims defendants

22   move to assert, and (2) its subject matter jurisdiction and permissive joinder over the claim

23   against Bank of the West.  It will then address Fidelity's delay and prejudice arguments.  The

24   court lastly addresses joinder of the parties to the counterclaims.

25   /////

26   /////

27   /////

28   /////

1    IV.    ANALYSIS

2       A. Futility of Amendment

3          1. <u>Subject Matter Jurisdiction</u>

4             a. Compulsory Counterclaims

5             The first six claims the Hodgsons assert are counterclaims, as they are asserted

6    against Fidelity, alleged agent of four other counterdefendants, namely EBI, Ferrari Investments,

7    LLC., David J. Ferrari, John C. Rogers; defendants seek to join all as necessary parties, as

8    counterdefendants to these six claims.  (Mot. to Amend, Ex. 1 at 1:22-26; "Mot. to Join" at 3:15-

9    17.)  Those claims are: Cancellation of Instruments (Mot. to Amend, Ex. 1 at 15:7-9);  Breach of

10   Contract (*id*. at 18:1-3); violation of Equal Credit Opportunity Act (*id*. at 19:12-15); Elder Abuse

11   under California's Civil Code (*id*. at 20:18-21); Elder Abuse under California's Welfare &

12   Institutions Code (*id*. at 23:1-4); and violations of California's Business and Professions Code (*id*.

13   at 23-25.)

14            The traditional rule is that federal courts have supplemental jurisdiction over

15   compulsory counterclaims, because a plaintiff would otherwise lose his opportunity to be heard

16   on those claims.  *Baker v. Gold Seal Liquors, Inc*., 417 U.S. 467, 469 n.1 (1974); *Sparrow v.*

17   *Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1066 (E.D. Cal. 2005).

18            Thus, the first question is whether the counterclaims here are compulsory.  If they

19   are instead permissive, "the next question is whether the court should exercise its discretion to

20   decline to assert supplemental jurisdiction over those claims."  *Sparrow*. 385 F. Supp. 2d at

21   1068.[2]  Section 1367(c), therefore, applies to such claims, and the court may in its discretion

22   _____

23   [2] The Ninth Circuit has not definitively ruled on the question whether § 1367 jurisdiction can
     cover permissive counterclaims.  The Seventh Circuit has held that 28 U.S.C. § 1367 "case or
     controversy" analysis is not married to the compulsory and permissive distinction in Rule 15.

24   *Channell v. Citicorp Nat. Servs., Inc*., 89 F.3d 379, 385 (7th Cir. 1996) ("Now that Congress has
     codified the supplemental jurisdiction in § 1367(a), courts should use the language of the statute

25   to define the extent of their powers.").  Within the Ninth Circuit, trial courts are split.  One district
     court in Arizona found if the counterclaim is permissive, supplemental jurisdiction cannot attach.

26   *Hart v. Clayton-Parker & Associates, Inc*., 869 F. Supp. 774, 776 (D. Ariz. 1994).  In decisions
     this court finds persuasive, other courts, including the court in *Sparrow*, have rejected *Hart* and

27   followed the Seventh Circuit.  *Sparrow*, 385 F. Supp. 2d at 1070; *Koumarian v. Chase Bank USA,*

28   *N.A*., C-08-4033 MMC, 2008 WL 5120053 (N.D. Cal. Dec. 3, 2008); *Avery v. First Resolution*

1    decline to exercise jurisdiction if, for instance, the counterclaim would substantially predominate

2    over the original claim.  28 U.S.C. § 1367(c)(2).  If the court finds that section 1367(c)(2) applies

3    to the six counterclaims and additional third party claim asserted, and denies jurisdiction over the

4    claims, then the amendment would be futile.  *Am. W. Airlines, Inc. v. GPA Grp., Ltd*., 877 F.2d

5    793, 801 (9th Cir. 1989) (amendment was futile because allegations to establish jurisdiction

6    contradicted sworn affidavits, thus failing to establish jurisdiction); *see also Union Pac. R.R. Co*.,

7    236 F. Supp. 2d at 1137; *Huff v. Neal*, 12-20762, 2014 WL 274500 (5th Cir. Jan. 27, 2014);

8    *Gonzalez v. United States*, CV 12-00375-TUC-JGZ, 2013 WL 308762 (D. Ariz. Jan. 25, 2013).

9            "Rule 13(a) provides that any causes of action which a party has against his

10   opponent and which arise out of the same transaction or occurrence as the opponent's claim must

11   be pleaded as counterclaims in a federal action.  Such pleading is compulsory.  If a party fails to

12   plead these causes of action as counterclaims, he is held to have waived them and is precluded by

13   res judicata from ever suing upon them again."  *Union Paving Co*., 276 F.2d at 470 (internal

14   citations omitted).  While compulsory counterclaims that are "the subject of pending litigation in

15   another court" are excepted from the waiver rule under 13(a), the exception does not prohibit the

16   litigant from asserting the claim and the claims are still treated as compulsory counterclaims for

17   amendment purposes.  *Id.*  Thus, even though two causes of action asserted in this motion are

18   subject to pending litigation in Placer County Superior Court, the practical effect of this exception

19   is immaterial here.  (RJN at 5:19-21, 8:15-17, Ex. A, ECF No. 15.)[3]

20           In determining whether a claim arises out of the same transaction or occurrence,

21   the Ninth Circuit applies "'the logical relationship test for compulsory counterclaims.'"  *Mattel,*

22

23   *Mgmt. Corp.*, 06-1812 HA, 2007 WL 1560653 (D. Or. May 25, 2007), aff'd, 561 F.3d 998 (9th
     Cir. 2009); *Mostin v. GL Recovery, LLC*, SACV090650AGANX, 2010 WL 668808 (C.D. Cal.
24   Feb. 19, 2010).

25   [3]  However, if the state court were to decide the pending case, that court's decision would
     preclude this court's decision regarding the matter.  *Nevada Eighty-Eight, Inc. v. Title Ins. Co. of*
26   *Minnesota*, 753 F. Supp. 1517, 1522 (D. Nev. 1990).  The record is unclear as to both the
     likelihood and propinquity of a state court ruling on the pending case in the Superior Court of
27   Placer County, Case No. SCV0031950.  (Notice of Removal, Ex. A at 36.)

28

                                                  8

1 *Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (quoting *In re Pegasus Gold*

2 *Corp.*, 394 F.3d 1189, 1195–96 (9th Cir. 2005)).  "'A logical relationship exists when the

3 counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the

4 same operative facts serve as the basis of both claims or the aggregate core of facts upon which

5 the claim rests activates additional legal rights otherwise dormant in the defendant.'"  *Id*. at 1110

6 (quoting *Pegasus Gold*, 394 F.3d at 1196).

7         The Ninth Circuit applies a "liberal reading of the 'transaction or occurrence'

8 standard."  *Pochiro v. Prudential Ins. Co. of America*, 827 F. 2d 1246, 1252 (9th Cir. 1987).  One

9 other court in the Eastern District has interpreted Circuit authority to find that a counterclaim

10 cannot be compulsory by way of an affirmative defense.  *Sparrow*, 385 F. Supp. 2d at 1069 n.3.

11         Here, the parties agree that the counterclaims arise from the same aggregate set of

12 facts, namely "the foreclosure sale of the real property which generated the surplus funds at the

13 trustee's sale," which is the subject of the instant action.  (Mot. to Amend 2:1-2; Opp'n at 2:27

14 3:1.)  Although the parties agree, the court still looks to the original claim to determine whether or

15 not the counterclaims are based on the same set of facts.  *Pochiro*, 827 F. 2d at 1250.

16         The underlying claim in this case is an Interpleader for Surplus Proceeds of

17 Trustee's Sale, in which the plaintiff, Fidelity, does not claim an interest.  (Notice of Removal,

18 Ex. A.)  Under these circumstances, it is unlikely that the claims regarding wrongful acts of the

19 parties involved in an allegedly wrongful foreclosure action are categorically compulsory to the

20 interpleader action regarding surplus funds from the sale.  *See Springate v. Weighmasters*

21 *Murphy, Inc. Money Purchase Pension Plan*, 217 F. Supp. 2d 1007, 1014 (C.D. Cal. 2002), *aff'd*

22 *sub nom. Springate v. Weighmasters Murphy, Inc*., 73 F. App'x 317 (9th Cir. 2003) (a claim for

23 breach of fiduciary duties against the interpleader plaintiff was not compulsory because it

24 concerned a "decline in the value of [the deceased's] vested interest . . ." and not the legal rights

25 to the assets at issue in the interpleader); 7 Charles Alan Wright & Arthur R. Miller, *Federal*

26 *Practice and Procedure* § 1715 (3d ed. 2011) (a counterclaim to an interpleader is usually

27 compulsory, and the court therefore has supplemental jurisdiction over it, "when the stakeholder

28 /////

1    is an interested party and when one of the claimants asserts that the stakeholder is independently

2    liable to him").

3           The facts at issue in the original interpleader claim here relate to the priority order

4    of liens on the property existing before the foreclosure, as delineated in California Civil Code §

5    2924k.  (Notice of Removal, Ex. A at 8-9.)  This dispute includes the primary issues of (1)

6    whether the claims of entitlement were timely submitted, and (2) whether Fidelity exercised its

7    due diligence in determining the order of priority of the liens.  (Notice of Removal, Ex. A at 8;

8    SBA's Answer to Compl. in Interpleader ("SBA's Answer") ¶¶ 14, 17, ECF No. 3.)  The facts at

9    issue in the counterclaims do not implicate the order of priority of competing interests, but rather

10   the allegedly wrongful acts leading to the foreclosure in the first place.  (Mot. to Amend, Ex. 1.)

11   Thus, it is not so clear that the sale itself arises from the same aggregate core of facts as the

12   interpleader.

13          However, equitable principles generally apply.in this context.  *Lee v. W. Coast Life*

14   *Ins. Co*., 688 F.3d 1004, 1012 (9th Cir. 2012) ("It is generally recognized that interpleader

15   'developed in equity and is governed by equitable principles.'") (quoting *Aetna Life Ins. Co. v.*

16   *Bayona*, 223 F.3d 1030, 1033–34 (9th Cir. 2000)).  Thus, the court can infer from the Hodgsons'

17   averment of equitable estoppel as a defense, that the facts leading up to the foreclosure sale will

18   be implicated.  (Hodgsons' Answer to the Compl. ("Hodgsons' Answer") at 5:16-17, ECF No. 5.)

19   The operative facts of the counterclaims are at issue in the interpleader by way of the Hodgsons'

20   defense against their co-defendants' assertion of their rights.  Thus, because the claims are

21   factually connected to the interpleader only by way of the Hodgsons' affirmative defense, the

22   claims are not compulsory.

23          b.  Supplemental Jurisdiction over the Permissive Counterclaims

24          The court next determines whether it has supplemental jurisdiction over the

25   counterclaims as permissive.  "Nonfederal claims are part of the same 'case' as federal claims

26   when they 'derive from a common nucleus of operative fact' and are such that a plaintiff 'would

27   ordinarily be expected to try them in one judicial proceeding.'"  *Trs. of Constr. Indus. & Laborers*

28   *Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc*., 333 F.3d 923, 925 (9th Cir.

1    2003) (quoting *Finley v. United States*, 490 U.S. 545, 549 (1989)) (internal quotations omitted).

2           While the Ninth Circuit has considered issues arising from affirmative defenses in

3    finding supplemental jurisdiction, *id.* at 925 (finding supplemental jurisdiction, in part, because a

4    defendant "planned to argue as part of its equitable estoppel defense that [defendant] did not in

5    fact owe any ERISA contributions.  Thus, the issue of [defendant's] ERISA obligations would

6    have been part of the trial . . . ."), it has yet to decide the precise issue before this court.  The

7    Second and Seventh Circuits have found that, since the enactment of the supplemental

8    jurisdiction statute, "a federal court may exercise supplemental jurisdiction over certain

9    permissive counterclaims."  *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 (2d Cir.

10   2004); *Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996).  One court in this

11   district has made the same determination, even as it declines to exercise that jurisdiction.

12   *Sparrow*, 385 F. Supp. 2d at 1067 (§ 1367 "case or controversy" test is "broader than the test for

13   compulsory counterclaims"); *see also Campos v. W. Dental Servs., Inc.*, 404 F. Supp. 2d 1164,

14   1170 (N.D. Cal. 2005).[4]

15          Here, claims one through six undoubtedly arise from the same controversy, the

16   foreclosure sale and debt on the Kings Beach property, which will be at issue in the Hodgsons'

17   equitable estoppel defense.  Thus, this court finds supplemental jurisdiction over the

18   counterclaims for purposes of these motions.

19   /////

20

21   [4] As in *Sparrow*, the court in *Campos* was concerned with (1) the chilling effect on plaintiff
     debtors from bringing suit under the California Fair Debt Collection Practices Act (FDCPA) by
22   allowing a debt collector to counterclaim for breach of their contract, and (2) prominence of the
     counterclaim.  The court in *Campos* noted the underlying policy of the FDCPA is to "give those
23   harmed by an alleged violative act a remedy against a debt collector regardless of whether the
     underlying debt is valid."  404 F. Supp. 2d at 1170.  Thus, "strong public policy reasons exist for
24   declining to exercise jurisdiction" over the defendant's underlying debt, even if the debt is valid.
     *Id*.  The same type of policy concern is not evident here.  Rather, the function of interpleader is to
25   protect the interpleader from liability for the funds that are being disputed.  *Lee v. W. Coast Life
     Ins. Co.*, 688 F.3d at 1009.  That protection does not extend to personal liability beyond the
26   trustee's duty to determine to whom the surplus should be delivered.  *Id*.  Here, the funds in
     dispute are the surplus proceeds.  There is no underlying policy protecting the trustee from being
27   sued for personal liability.

28

1    While the claims could substantially predominate over the interpleader action,

2    given their complexity relative to the priority order issue in the interpleader, the court does not

3    withhold jurisdiction at this time because the defense will likely present the issue of whether the

4    foreclosure sale should have occurred in the first place.  *Acri v. Varian Assocs., Inc*., 114 F.3d

5    999, 1000*, as supplemented*, 121 F.3d 714 (9th Cir. 1997) ("[T]he district court may exercise

6    supplemental jurisdiction over state law claims without sua sponte addressing whether it should

7    be declined under § 1367(c).").

8    Moreover, the court has federal question jurisdiction over the third cause of action

9    under the federal Equal Credit and Opportunity Act.  *New SD, Inc. v. Rockwell Int'l Corp*.,

10   79 F.3d 953, 955 (9th Cir. 1996) ("When federal law applies, . . . it follows that the question

11   arises under federal law, and federal question jurisdiction exists.").  It thus cannot decline to

12   exercise jurisdiction over this claim, as § 1367(c) applies only to claims arising under

13   supplemental jurisdiction.  28 U.S.C. § 1367(a).

14   In the interest of judicial economy, the court asserts its discretion to exercise

15   jurisdiction over claims one through six at this time.  *See United Mine Workers of Am. v. Gibbs*,

16   383 U.S. 715, 726 (1966).  No jurisdictional hurdle precludes the Hodgsons' amending their

17   complaint.  *Id*. at 727 (". . . [T]he issue whether pendent jurisdiction has been properly assumed is

18   one which remains open throughout the litigation.").

19   c.  Negligence

20   The seventh state law cause of action for negligence is asserted against only  Bank

21   of the West.  Thus, it is not a counterclaim and is not subject to the Rule 13 framework.  Fed. R.

22   Civ. P. 13(a).  Leave to amend can be denied if amendment would be futile.  *Bonin*, 59 F.3d at

23   845.  This court must consider its supplemental jurisdiction over the claim and joinder of Bank

24   the West.  *Union Pac. R.R. Co*., 236 F. Supp. 2d at 1137.

25   i.  Supplemental Jurisdiction

26   Because negligence is a state law claim, the court must be able to acquire

27   supplemental jurisdiction over it under 28 U.S.C. § 1367 for jurisdiction to adhere.

28   /////

12

1     The claim is part of the same case or controversy as the original claim in

2   interpleader.  The necessary factual relationship exists in that the Hodgsons allege that Bank of

3   the West "provid[ed] [c]ounterdefendants . . . with [the Hodgsons'] private information it held."

4   (Mot. to Amend, Ex. 1 ¶ 161.)  They allege that "as a direct and proximate cause of Bank of the

5   West's disclosure of [their] private information, [the Hodgsons] have been damaged."  (*Id.* ¶ 11.)

6     Thus, the facts alleged involve the counterdefendants' receipt of confidential

7   information allegedly used in the conspiratorial plan to deprive the Hodgsons' of their property.

8   It follows that, insofar as the Hodgsons' equitable estoppel defense is at issue in the interpleader,

9   the facts arise out of the same controversy.  *See Desert Valley*, 333 F.3d at 925.

10                              ii.  Permissive Joinder

11     The court finds that Bank of the West can be joined permissively.  FED. R. CIV. P.

12   20(a).  "Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and

13   added expense."  *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  Joinder of a party

14   under Rule 20 is proper if: (1) the right to relief arises out of "the same transaction, occurrence, or

15   series of transactions or occurrences"; and (2) any question of law or fact common to all parties

16   joined will "arise in the action."  FED. R. CIV. P. 20.  Courts construe these requirements liberally

17   to promote trial convenience and to expedite determination of disputes.  *See United Mine Workers*

18   *of Am.,* 383 U.S. at 724 ("Under the Rules, the impulse is toward entertaining the broadest

19   possible scope of action consistent with fairness to the parties; joinder of claims, parties and

20   remedies is strongly encouraged.").

21     In this context, the same transaction or occurrence requirement "refers to similarity

22   in the factual background of a claim."  *Coughlin*, 130 F.3d at 1350.  Claims that "arise out of a

23   systematic pattern of events" and "have [a] very definite logical relationship" arise from the same

24   transaction or occurrence.  *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 842–43 (9th Cir. 2000)

25   (internal quotations omitted).

26     The second requirement is that there be a single question of law or fact common to

27   all the parties joined.  *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir.

28

1   1980).[5]  "The common question need not predominate; [that is] a requirement for class actions,

2   not for permissive joinder."  *Lee v. Cook Cnty., Ill.*, 635 F.3d 969, 971 (7th Cir. 2011); *Lennar*

3   *Mare Island, LLC v. Steadfast Ins. Co.*, 2:12-CV-02182-KJM, 2013 WL 6623855 (E.D. Cal. Dec.

4   16, 2013).

5          Here, the negligence claim arises out of the events leading up to the November

6   2012 foreclosure of the property in Kings Beach, California.  The claim likely involves questions

7   of fact "common to all defendants."  FED. R. CIV. P. 20 (a)(2)(B).  The question is whether the

8   right to relief stems from the same transaction or occurrence as defendants' claims against

9   plaintiff.  *See Travelers Ins. Co. v. Intraco, Inc.*, 163 F.R.D. 554, 556 (S.D. Iowa 1995).

10          The Hodgsons allege that Bank of the West "provid[ed] [the other defendants] . . .

11   with [c]ounterclaimants [sic] private information . . . ."  (Mot. to Amend, Ex. 1 ¶ 161.)  This

12   assertion will be a question in resolving the elder abuse claim, for instance, in which the

13   Hodgsons allege that the "[c]ounterdefendants did wrongfully obtain private information from . . .

14   Bank of the West . . . regarding [c]ounterclaimants' protected information . . . ."  (*Id.* ¶ 99.)  *See*

15   *Desert Empire Bank*, 623 F.2d at 1375 (permissive joinder was proper where common questions

16   of fact included whether "agent Schulte in fact [made] the alleged representations of January 22,

17   1976, and if so, [whether] Schulte [was] acting within the scope of his authority as an agent of

18   INA at the time that such representations were made").

19          Amendment to allow the seventh claim would not be futile.  Thus, the court

20   considers Fidelity's unfair prejudice and undue delay arguments.

21          2.  Unfair Prejudice and Undue Delay

22          Although leave of court should be given freely, a court may deny a motion to

23   amend if the motion is made in bad faith, there would be prejudice to the opposing party, the

24   amendment would be futile or would delay the action, or if the party acted in a dilatory fashion in

25   seeking to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bonin*, 59 F.3d at 845.  However,

26   _____

27          [5] *Desert Empire Bank* has been superseded by 28 U.S.C. § 1447(e) in ways not applicable here.  *Khoshnood v. Bank of Am.*, CV 11-04551 AHM FFMX, 2012 WL 751919, at *1 n.4 (C.D. Cal. Mar. 6, 2012); *see also IBC*

28   *Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000). The test from *Desert Empire Bank* is still applicable where, as here, a party to be joined will not destroy diversity.

1   "[u]ndue delay by itself[ ] […] is insufficient to justify denying a motion to amend." *Bowles*, 198

2   F.3d at 758.  Without a further showing that the amendment causes undue prejudice to the

3   defendant, is sought in bad faith, or is futile, the court may grant leave to amend.  *Id.* at 757.

4   "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd.*,

5   833 F.2d at 187.

6         Citing *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), plaintiff avers that

7   because defendants knew about the claim when drafting the original pleading, leave to amend

8   should be denied.  (Opp'n at 5:9-12.)  In that case, however, the Ninth Circuit affirmed a district

9   court's denial of a motion for leave in part because the parties "had already engaged in

10  voluminous discovery," were two months away from trial, and discovery was closed.  *Kaplan*, 49

11  F.3d at 1370 (internal quotations omitted).

12        Here, the court has yet to issue a scheduling order, so discovery has not even

13  begun.  There is a pending state court action based on the same or similar facts.  (Notice of

14  Removal, Ex. A at 36-48.)  While it is unclear from the record whether the plaintiff is a party in

15  the state court action, plaintiff is aware of it, as the state claim was the impetus for its own

16  interpleader claim.  *Rimkus Consulting Group, Inc. v. Cammarata*, 257 F.R.D. 127, 135-136

17  (S.D. Tex. 2009) (where defendant's motion to leave to assert a compulsory counterclaim was

18  granted because, inter alia, the parties were "aware of and [had] been defending against an

19  identical counterclaim in the case.").  Once the case reaches the stage for scheduling, the court

20  can put in place discovery procedures to avoid duplication.

21        Plaintiff's averment that defending itself in both federal and state court would

22  cause unfair prejudice is unsupported by any meaningful detail.  (Opp'n at 5-6.)  Moreover, Ninth

23  Circuit precedent permits counterclaimant to assert a claim that is subject to pending litigation in

24  state court.  *See Union Paving Co.*, 276 F.2d at 471.  Amendment will not prejudice plaintiff.

25  The court GRANTS defendants' motion for leave to amend in its entirety.

26  B.  Permissive Joinder of Parties to the Counterclaims

27        Under Rule 13(h), parties may be joined to counterclaims based on Rules 19 or 20.

28  While the Hodgsons argue that the parties to be joined are necessary parties (Mot. to Join 2:6-8),

the court finds that all the parties can be joined permissively.  FED. R. CIV. P. 20(a).  Joinder of a party under Rule 20 is proper if: (1) the right to relief arises out of "the same transaction, occurrence, or series of transactions or occurrences"; and (2) any question of law or fact common to all parties joined will "arise in the action."  FED. R. CIV. P. 20.  Courts construe these requirements liberally to promote trial convenience and to expedite determination of disputes.  *See United Mine Workers of Am.*, 383 U.S. at 724.

Here, each claim arises out of the events leading up to the November 2012 foreclosure of the Kings Beach property.  The claims against each putative party are not "discrete, and [do not involve] different legal issues, standards, and procedure."  *Coughlin*, 130 F.3d at 1351.  The Hodgsons generally allege that all parties "collaborated to convert colorable title to EBI[ ] . . . [and that they] used a system of filing false instruments within the public domain in a scheme to dispossess [the Hodgsons] of their [p]roperty."  (Mot. to Amend, Ex. 1 at 2:23-24.)  The Hodgsons have alleged a conspiratorial chain of events preceding the foreclosure, indicating that the parties' involvement in the action is intertwined.  (*Id.* ¶¶ 1-61.)

The Hodgsons allege that "[c]ounterdefendant Ferrari Investments has been actively attempting to purchase [c]ounterclaimants' [p]roperty since at least the year 2000."  (*Id.* at 2:23-24.)  They allege the same about David J. Ferrari, the "managing member of Ferrari Investments."  (*Id.* at 2:25-28.)  The Hodgsons also allege that EBI was formed "for the sole purpose of purchasing [c]ounterclaimants' note, deed of trust and other existing loan documents pertaining to the [c]ounterclaimants' [p]roperty."  (*Id.* at 3:13-15.)  They seek to join John C. Rogers as "the managing member of EBI."  (*Id.* at 3:8.)

In the Cancellation of Instruments claim in particular, they allege that all four parties to be joined "knew of the falsity of the [Notice of Default] when it was executed and elected to file it at the peril of [the Hodgsons'] contract rights."  (*Id.* at 17:11-13.)  Thus, the four parties to be joined to the counterclaims are involved in the conspiratorial allegations at issue in the counterclaims against Fidelity, who was allegedly acting as their agent.  (*Id.* at 5:24-25.)

Common questions as to each defendant will necessarily arise.  For instance, whether there was a genuine monetary default prior to the issuance of the Notice of Default will

be at issue as to each defendant in the elder abuse claim.  (*Id.* ¶ 99.)  Because "[t]he common question need not predominate," this is sufficient for permissive joinder.  *Lee v. Cook Cnty.*, 635 F.3d at 971.  The court finds that each of the parties to be joined to the counterclaim may be joined under Rule 20.

V.      CONCLUSION

        For the foregoing reasons, defendants' motions are GRANTED.

DATED:  May 9, 2014.

_____
UNITED STATES DISTRICT JUDGE