1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FIDELITY NATIONAL TITLE                    No.  2:13-CV-2030-KJM-AC
     COMPANY,
12
                          Plaintiff,
13                                               ORDER
              v.
14
     U.S. SMALL BUSINESS
15   ADMINISTRATION, et al.,

16                        Defendants.

17   _____

18   AND RELATED COUNTER/CROSS
     CLAIMS.
19

20          This matter is before the court on the motion by Counterdefendants East Bay

21   Investors, LLC ("EBI"), Ferrari Investment, LLC, David J. Ferrari, and John C. Rogers (together,

22   "Counterdefendants") to dismiss the counterclaim filed by Fredrick and Linda Hodgson

23   ("Borrowers").  This matter is decided without a hearing.  For the following reasons, the court

24   DENIES the motion in part and GRANTS it in part.

25   I.       BACKGROUND

26          Borrowers entered into a business loan agreement with Bank of the West

27   ("BofW") in July 2000.  Declaration of John C. Rogers, Ex. 1, ECF No. 67 ("Rogers' Decl.").

28   This agreement was for a promissory note of $820,000, secured by a recorded deed of trust

                                                 1

("DOT") for real property located at 8258 North Lake Tahoe Boulevard, Kings Beach, California, 96143 (the "Property"). *Id.* Ex. 2, ECF No. 67. This Property, the Falcon Lodge, was operated by Borrowers. The note and DOT combined are the relevant loan ("Loan").

In February 2011, Borrowers and BofW executed a Forbearance Agreement. *Id.* Ex. 6, ECF No. 67. The Forbearance Agreement modified the Loan and stated that any default under the Agreement would terminate the modification. It also modified the interest rate on the principal to 3.75%; the payment due date to the 25th of the month; and gave Borrowers ten days to cure a default on the Loan. *Id.,* Ex. 6 at 5. At that time, the outstanding balance totaled $389,412.25. *Id.* On November 30, 2011, BofW notified Borrowers in a letter that their Loan was in default. *Id.,* Ex. 9 at 4, ECF No. 67. The letter demanded payment of $10,540. *Id.*

On March 12, 2012, EBI bought the Loan from BofW and recorded an assignment of the DOT. *Id.,* Ex. 8, ECF No. 67. On March 27, 2012, EBI, operating as creditor to the Borrowers, notified the Borrowers in writing of the reassignment of the Loan and Borrowers' current default status. *Id.,* Ex. 9, ECF No. 67. In the letter, EBI asserted the terms of the Loan had reset to what they were before the forbearance period. *Id.* EBI also asserted the monthly payment was now $5,103.77, and to cure the default, Borrowers must pay all monthly payments from October 1, 2011 to the date of cure, plus "various expenses incurred and paid by the Bank which were part of the purchase price paid by EBI." *Id.* Borrowers tendered $37,413.94 to EBI on April 2, 2012. *Id.,* Ex. 10, ECF No. 67. Borrowers asserted in the letter enclosed with the check to EBI that this was the amount due under the Forbearance Agreement. *Id.*

On April 5, 2012, EBI rejected that tender, stating the "amounts, calculations, and scope are incorrect." *Id.,* Ex. 11 at 3, ECF No. 67. The rejection acknowledged the February 2011 modification but stated that "[o]n your defaults, the Forbearance Period and the modification ended and the original terms of the Note and Deed of Trust and other Related Documents were restored." *Id.* at 3. The letter also outlined additional "non-monetary and 'Compliance Defaults'" and "[d]emand is hereby made to cure each and every described default and provide proof that each default is cured on or before Monday, April 23, 3012." *Id.* at 6. On November 16, 2012, in the midst of Borrowers' filing for bankruptcy, Fidelity National Title

1   Company ("Fidelity") held a foreclosure sale of the Property.  Fidelity Mem. P. & A. at 2, ECF

2   No. 112.  EBI purchased the Property.  *Id.*

3          Fidelity commenced this interpleader action in Placer County Superior Court on

4   August 14, 2013, alleging it possessed surplus proceeds from a non-judicial sale of the Property.

5   *See generally* Notice of Removal, Ex. A, ECF 1.  Fidelity averred that because the Hodgsons,

6   along with the other defendants, claimed an interest in those proceeds, an interpleader action was

7   proper.  *Id*. at 6.  The Hodgsons and the additional defendants in this action, U.S. Small Business

8   Administration ("SBA"), Placer County Environmental Health and Allan R. Frumkin, each

9   "submitted . . . written claims of entitlement to the remaining surplus foreclosure proceeds."  *Id*.

10  at 8.  The action was removed from state court to this court by defendant SBA.  *Id*.

11         On December 18, 2013, Borrowers filed a motion to amend to assert compulsory

12  counterclaims, including six claims against Fidelity and four third parties, as well as one claim

13  against an additional third party.[1]  Mot. to Amend, ECF No. 8.  The next day, Borrowers filed a

14  motion to join counterdefendants as necessary parties to the counterclaim.  Mot. to Join

15  Necessary Parties, ECF No. 9.  The motions to amend and to join were granted by this court on

16  May 12, 2014.  ECF No. 32.

17         Borrowers filed a counterclaim on May 13, 2014.  Counterclaim, ECF No. 33.

18  Counterdefendants filed a motion for a more definite statement and a motion to strike, which the

19  court has denied.  ECF Nos. 35, 36, 76.  Counterdefendant BofW filed its answer to Borrowers'

20  counterclaim on June 11, 2014.  ECF No. 55.  The remaining counterdefendants filed this motion

21  to dismiss ("Counterdefendants' Motion") on July 3, 2014.  ECF No. 65.  With their motion to

22  dismiss, counterdefendants filed a Request for Judicial Notice which included the DOT,

23

24         _____
           [1] These claims come after lengthy proceedings in both state and bankruptcy court. *See*
25  Counterdefendants' Mot. at 10-11, ECF No. 65. Briefly, EBI filed a complaint for unlawful
    detainer following a nonjudicial closure. ECF No. 70, Ex. 28. Borrowers filed a general demurrer
26  (*id.,* Ex. 32), and EBI obtained a judgment in the action. *Id*., Ex. 31. On January 25, 2013,
    Borrowers filed an action in state court. *Id.,* Ex. 22. It was removed, remanded, and removed
27  again to bankruptcy court, where it was voluntarily dismissed on January 13, 2014. *Id.,* Ex. 34.
    On September 3, 2013, Borrowers filed a third bankruptcy case in the Eastern District Bankruptcy
28  Court (*id.,* Ex. 32), which was dismissed on December 13, 2013. *Id.,* Ex. 33.

1   Forbearance Agreement, assignment of the promissory note, and correspondence between the

2   parties with regard to the alleged default status and attempts to cure.  Req. for Jud. Notice

3   ("RJN"), ECF No. 70.  Borrowers filed objections to the RJN on August 8, 2014.  ECF No. 91.

4   Borrowers filed their opposition to the instant motion to dismiss on August 9, 2014.  ECF No. 92.

5   Counterdefendants filed their reply on August 15, 2014.  ECF No. 99.

6          In their counterclaim, Borrowers bring six claims for relief against all

7   Counterdefendants and plaintiff Fidelity: 1) Cancellation of Instrument(s); 2) Breach of Contract;

8   3) Violation of the Equal Credit Opportunity Act; 4) Elder Abuse (unfair advantage); 5) Elder

9   Abuse (financial abuse); 6) unfair, unlawful, fraudulent business practices under the California

10   Business and Professions Code; and 7) Negligence.  Countercl., ECF No. 33.  Borrowers assert

11   counterdefendants formed EBI for the sole purpose of becoming the Borrowers' creditor and to

12   take control of the Property, breached the terms of the Deed of Trust, and unlawfully prevented

13   Borrowers and the Falcon Lodge from curing their defects and continuing to operate.  *Id.* at 3.

14   Borrowers and counterdefendants dispute whether Borrowers were in default, and the amount

15   necessary to cure the alleged default.  *Id.* at 7-8.  Borrowers also claim counterdefendants did not

16   provide notice of a non-monetary default and how such a default could be cured.  Opp'n at 10.

17   Defendants contend Borrowers have not alleged sufficient facts to state any claim for relief and

18   Borrowers' material factual allegations are easily refuted.  Counterdefendants' Mot. at 2.

19   II.    LEGAL STANDARD

20          A.     Motion to Dismiss

21          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

22   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

23   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

24   under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

25   1990).

26          Although a complaint need contain only "a short and plain statement of the claim

27   showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

28   to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

4

1  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

2  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

3  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

4  conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

5  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

6  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

7  its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

8  interplay between the factual allegations of the complaint and the dispositive issues of law in the

9  action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

10         In making this context-specific evaluation, this court must construe the complaint

11  in the light most favorable to the plaintiff and accept as true the factual allegations of the

12  complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

13  conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted*

14  *in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

15  judicial notice" or to material attached to or incorporated by reference into the complaint.

16  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

17  consideration of documents attached to a complaint or incorporated by reference or matter of

18  judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United*

19  *States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d

20  1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,

21  980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

22  dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

23         B.       Request for Judicial Notice

24         A court may incorporate documents into the complaint by reference for purposes

25  of deciding the instant motion.  *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152 (9th Cir.

26  2012).  "Ordinarily, a court may look only at the face of the complaint to decide a motion to

27  dismiss," *Van Buskirk v. Cable News Network*, 284 F.3d 977, 980 (9th Cir. 2002), and may not

28  "consider[] evidence outside the pleadings," *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.

1    2003). However, exceptions exist for "documents attached to the complaint, documents

2    incorporated by reference in the complaint, or matters of judicial notice," which a court may

3    properly consider "without converting the motion to dismiss into a motion for summary

4    judgment." *Id*. (citations omitted). A document is "incorporated by reference into a complaint if

5    the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's

6    claim," and "[c]ourts may only take judicial notice of adjudicative facts that are not subject to

7    reasonable dispute" or "some public records." *Id*. (citations and internal quotation marks

8    omitted).

9           The counterclaim refers to the DOT, the February 3, 2011 Forbearance

10    Agreement; the November 30, 2011 letter from BofW notifying Borrowers of their default; the

11    March 2012 transfer of the Loan from BofW to EBI; and the March/April 2012 correspondence in

12    which EBI notified Borrowers of their default status, Borrowers attempted to cure, and EBI

13    responded. The documents are authenticated by a sworn declaration from John C. Rogers, a

14    counterdefendant with personal knowledge. Rogers Decl., ECF No. 67. These documents are

15    germane to the counterclaim because the thrust of the dispute is whether Borrowers were aware of

16    the entirety of their default, in what amount, and whether Borrowers sufficiently cured their

17    default status. These documents are referenced extensively by both parties in the counterclaim,

18    motion to dismiss and oppositional papers. ECF Nos. 33, 55, 65, 92, 99. These documents are

19    therefore incorporated by reference into the counterclaim.

20           The court also takes judicial notice of the state court and bankruptcy court filings

21    submitted with counterdefendants' motion to dismiss. *See* RJN Exhibits 13-34. These

22    documents are public records and filings germane to the res judicata defense raised by the

23    counterdefendants in their motion to dismiss. *See Argueta v. J.P. Morgan Chase*, 787 F. Supp. 2d

24    1099, 1103 (E.D. Cal. 2011) (taking judicial notice of documents that "are matters of public

25    record whose accuracy cannot be questioned"); *see also NuCal Foods, Inc. v. Quality Egg LLC*,

26    887 F. Supp. 2d 977, 984 (E.D. Cal. 2012) (taking judicial notice of pleadings, affidavits and

27    petitions in state court proceeding).

28    /////

1    III.    ANALYSIS

2         A.  Factual Allegations and Viability of Claims

3              Although the counterclaim need not contain detailed factual allegations, its

4    "(f)actual allegations must be enough to raise a right to relief above the speculative level . . . on

5    the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  In

6    short, it must allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

7    *Atlantic Corp. v. Twombly,* 550 U.S. 544, 556–57, 570 (2007) (parentheses in original; emphasis

8    added).  Counterdefendants contend that each of the Borrowers' factual allegations is easily

9    refuted by the documents judicially noticed by this Order.  Although counterdefendants have

10   produced documents that put Borrowers on notice of default and their nonmonetary obligations,

11   these documents do not disprove Borrowers' factual allegations, which at this pleading stage must

12   be taken as true.  Borrowers allege counterdefendants conspired to foreclose the Property,

13   misrepresented the debts owed, and acted against Borrowers by purchasing the Loan to take

14   control of the Property.  Opp'n at 4-8.  These allegations are not refuted by the information in the

15   documents.  Taking Borrowers' contentions on their face, Borrowers have stated viable claims for

16   relief.

17        B.  California Tender Rule

18             Counterdefendants contend the entire counterclaim should be dismissed because

19   Borrowers have failed to make an unconditional tender of the foreclosed debt.  They argue that,

20   absent an offer to tender the obligation in full, plaintiffs lack standing to challenge nonjudicial

21   foreclosure proceedings.  Counterdefendants' Mot. at 15.  Borrowers contend they do not need to

22   offer complete tender because they are not attempting to set aside the sale.  Instead, their claims

23   seek damages for the contention that EBI "contrived and falsified" the amount required to cure,

24   wrongfully rejected their tender, and did so in furtherance of a conspiracy to take control of the

25   property. *See generally* Countercl., ECF No. 33.

26             Under California law, in an action to set aside a trustee's sale, a plaintiff must

27   demonstrate that he has made a valid and viable tender [offer] of payment of the indebtedness."

28   *Pantoja v. Countrywide Home Loans*, Inc., 640 F.Supp.2d 1177, 1183–84 (N.D. Cal. 2009)

1    (citations and quotation marks omitted); *see also Alcaraz v. Wachovia Mortgage FSB*,

2    592 F. Supp. 2d 1296, 1304 (E.D. Cal. 2009) ("'A valid and viable tender of payment of the

3    indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.'")

4    (citing *Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal. App. 3d 112 (Ct. App. 1971)). A tender must

5    be one of full performance and must also be unconditional. *Arnolds Mgmt. Corp. v. Eischen*,

6    158 Cal. App. 3d 575, 580 (Ct. App. 1984).

7         The California tender rule applies in an action to set aside a trustee's sale for

8    alleged irregularities in the sale notice or procedure. "The rationale behind the rule is that if

9    plaintiffs could not have redeemed the property had the sale procedures been proper, any

10   irregularities in the sale did not result in damages to the plaintiffs." *FPCI RE–HAB 01 v. E & G

11   Invs., Ltd.*, 207 Cal. App. 3d 1018, 1021 (Ct. App. 1989); *see also Intengan v. BAC Home Loans

12   Servicing LP*, 214 Cal. App. 4th 1047, 1053 (2013) ("[A] plaintiff may not challenge the

13   propriety of a foreclosure on his or her property without offering to repay what he or she

14   borrowed against the property."). Furthermore, a party must allege full tender "in order to

15   maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savs.

16   Bank*, 43 Cal. App. 4th 1101 (Ct. App. 1996); s*ee also Arnolds Mgmt. Corp.*, 158 Cal. App. 3d at

17   579 ("A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can

18   allege and establish a valid tender.") (citation omitted).

19        However, "the tender rule is not without exceptions." *Tamburri v. Suntrust

20   Mortgage, et. al.*, No. C–11–2899 EMC, 2011 WL 6294472 (N.D. Cal. Dec. 15, 2011). The

21   exceptions and qualifications to California's tender rule counsel against a mechanical application

22   of the rule at the pleading stage. *Tamburri*, 2011 WL 6294472 at *3. Several courts have

23   recognized a general equitable exception to applying the tender rule where "it would be

24   inequitable to do so." *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997) (internal citations and

25   quotations omitted); *see, e.g., Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911)

26   (recognizing that there are "cases holding that, where a party has the right to avoid a sale, he is

27   not bound to tender any payment in redemption;" adding that, "[w]hatever may be the correct

28   rule, viewing the question generally, it is certainly not the law that an offer to pay the debt must

8

1  be made, where it would be inequitable to exact such offer of the party complaining of the sale");

2  *Robinson v. Bank of America*, 12–CV–00494–RMW, 2012 WL 1932842, at *3 (N.D. Cal.

3  May 29, 2012) (inequitable to apply tender rule in certain circumstances); *Bowe v. Am. Mortg.*

4  *Network, Inc.*, CV 11–08381 DDP SHX, 2012 WL 2071759, at *2 (C.D. Cal. June 8, 2012)

5  (same); *Giannini v. American Home Mortg. Servicing, Inc.*, No. 11–04489 TEH, 2012 WL

6  298254, at *3 (N.D. Cal. Feb. 1, 2012) (same).

7          In the instant case, Borrowers contend that tender, or at least full tender, should not

8  be required because they are not contesting irregularities in sale notice or procedure.  Borrowers

9  do not even state a claim for wrongful foreclosure, which would implicate sale procedures.  A

10  growing number of courts have explicitly held that the tender rule only applies in cases seeking to

11  set aside a completed sale.  *See, e.g., Vissuet v. Indymac Mortg. Services*, No. 09–CV–2321–IEG

12  (CAB), 2010 WL 1031013, at *2 (S.D. Cal. Mar. 19, 2010) ("[T]he California 'tender rule'

13  applies only where the plaintiff is trying to set aside a foreclosure sale due to some irregularity.");

14  *Lona v. Citibank, N.A,* 202 Cal. App. 4th 112–114 (2011) ("Courts recognize certain exceptions

15  to the tender rule, such as when the borrower challenges the validity of the underlying debt . . . if

16  the borrower's action attacks the validity of the underlying debt,  a tender is not required since it

17  would constitute an affirmation of the debt.").

18          Both parties agree an amount was tendered, but dispute whether that amount was

19  enough to cure the default.  Although a sale has taken place, Borrowers seek relief from

20  counterdefendants for their alleged wrongdoing leading up to the sale, their intention to

21  wrongfully take control of the Property, and their false demands for tender to cure the default.

22  Borrowers' claim challenges pre-sale actions and is not barred by the tender rule.

23      C.  Res Judicata

24          The counterdefendants contend the counterclaim is barred by res judicata because

25  the question of legal title is covered by the previous unlawful detainer action.  EBI obtained a

26  judgment in an unlawful detainer action concerning the Property in July 2013. Counter-

27  defendants' Mot. at 10, 16.  However, such an action is given limited preclusive effect.  A

28  judgment in unlawful detainer will not prevent one who is dispossessed from bringing a

1    subsequent action to resolve questions of title or to adjudicate other legal and equitable claims

2    between the parties.  *Vella v. Hudgins*, 20 Cal. 3d 251, 255 (1977) (collecting cases).

3              Applying the traditional rule that a judgment rendered by a court of competent

4    jurisdiction is conclusive as to any issues necessarily determined in that action, courts have held

5    that subsequent fraud or quiet title suits founded upon allegations of irregularity in a trustee's sale

6    are barred by a prior unlawful detainer judgment.  *Freeze v. Salot,* 122 Cal. App. 2d 561 (1954);

7    *Bliss v. Security-First Nat. Bank,* 81 Cal. App. 2d 50 (1947); *Seidell v. Anglo-California Trust*

8    *Co.,* 55 Cal. App. 2d 913 (1942).  "Where, however, the claim sought to be asserted in the second

9    action encompasses activities not directly connected with the conduct of the sale, applicability of

10   the res judicata doctrine, either as a complete bar to further proceedings or as a source of

11   collateral estoppel, is much less clear." *Vella,* 20 Cal. 3d at 256.  A detainer action has statutory

12   time constraints and limited resources; it does not require a litigant to argue a "complex fraud

13   claim involving activities not directly related to the technical regularity of the trustee's sale." *Id.*

14   at 258.  Borrowers' claims go beyond the scope of technical regularity because they involve

15   claims of misrepresentation, conspiracy to foreclose the property and an attempt by Borrowers to

16   cure the debt.  Borrowers allege wrongdoing in the actions and representations made prior to the

17   foreclosure.  The unlawful detainer action was limited in scope and did not fully and completely

18   adjudicate the issues before the court in this action.  For these reasons, the counterclaim is not

19   barred by res judicata.

20        D.  Claims against Ferrari Investment, LLC, David J. Ferrari, and John C. Rogers.

21             Counterdefendants allege the complaint is rife with conclusory allegations against

22   Ferrari Investment, David Ferrari, and John Rogers.  Counterdefendants' Mot. at 18.

23   Counterdefendants also contend that title has vested with EBI, and therefore the claims against

24   these other parties are not proper.  *Id.* at 19.  The court agrees that Borrowers' counterclaim fails

25   to allege any facts against these parties.  The counterclaim contains only conclusory statements of

26   conspiracy that each "immediately began to exercise over [c]ounterclaimants by concocting a

27   fictitious monetary default" and that fiction was "created for the malevolent purpose of acquiring

28   [c]ounterclaimants' Property."  Countercl. at 8.  Plaintiffs do not, as required under the heightened

1   pleading standard of Rule 9, assert the particular circumstances against these individuals that

2   constitute fraud.  FED. R. CIV. P. 9(b).  Moreover, the facts alleged in the counterclaim, the

3   rejection of tender and misrepresentation of debt owed to cure, are against the creditor EBI, not

4   these other parties.  Because the court cannot find these defects cannot be cured by amendment,

5   however, the court grants with leave to amend.

6   IV.     CONCLUSION

7              For the foregoing reasons, Counterdefendants' motion to dismiss is GRANTED

8   with respect to the claims against Ferrari Investment, LLC, David J. Ferrari, and John C. Rogers;

9   the motion is DENIED in all other respects.  Plaintiffs should file an amended complaint within

10  21 days of the filed date of this order.

11             IT IS SO ORDERED.

12  DATED:  November 7, 2014.

13

14

15  _____
    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28