UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDELITY NATIONAL TITLE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. SMALL BUSINESS ADMINISTRATION; PLACER COUNTY ENVIRONMENTAL HEALTH; ALLAN R. FRUMKIN; FREDRICK W. HODGSON; LINDA H. HODGSON; and DOES 1 through 20, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTER/CROSSCLAIMS. | No. 2:13-CV-02030-KJM-AC<br><br>ORDER |

This matter is before the court on Fidelity National Title Company's motion for discharge of trustee and for payment of its attorneys' fees and costs. ECF No. 111 (Mot.). The court took the matter under submission without oral argument. The court grants Fidelity's motion for discharge and grants in part its motion for costs and attorneys' fees. The court takes judicial notice of the bankruptcy court materials submitted in Fidelity's unopposed request. ECF No. 124.

1

1    I.      BACKGROUND

2            Fredrick and Linda Hodgson owned a hotel in Kings Beach, California.  Fidelity

3    Mem. P. & A. 2, ECF No. 112 (Mem.); SBA Opp'n 1, ECF No. 117 (SBA Opp'n).

4    Counterdefendant East Bay Investors (EBI) held the first deed of trust on the hotel, and the SBA

5    held the second deed of trust.  SBA Opp'n 2.  EBI appointed Fidelity as its trustee under its deed

6    of trust, and Fidelity recorded a notice of default on May 16, 2012.  *Id.*  One day before a

7    foreclosure sale of the hotel was to take place, the Hodgsons filed a petition under Chapter 13 of

8    the Bankruptcy Code in Nevada federal court.  Req. for Judicial Notice Ex. A, at 4, ECF No. 124

9    (RJN).  Their Nevada bankruptcy case was dismissed on November 16, 2012.  *Id.*  The same day,

10   Fidelity conducted a foreclosure sale of the hotel.  Mem. 2; SBA Opp'n 1.  EBI purchased the

11   property for $135,101.85 more than was owed under the foreclosed deed of trust.  Mem. 2; SBA

12   Opp'n 2.  One day before that sale, however, the Hodgsons had filed a second petition under

13   Chapter 13 in California.  RJN 4.  Although the California bankruptcy court annulled the

14   automatic stay associated with the second petition, RJN 5-6, the Hodgsons maintain the

15   foreclosure sale was conducted in violation of the automatic stay, Hodgson Opp'n 2-4, ECF No.

16   118.  The Hodgsons also commenced an action for wrongful foreclosure in California state court.

17   Mem. 1-2.  That action was removed to the bankruptcy court.  Wechsler Decl. Ex. B, at 8, ECF

18   No. 113-1 (Decl.).

19           On July 15, 2013, the day the California bankruptcy case was dismissed, *see id.*,

20   the SBA sent a letter to Fidelity's counsel asserting that its security interest entitled it to the

21   surplus sale proceeds. Mem. 3; Decl. Ex. A, at 3-4.  Fidelity replied on July 17, 2013 and

22   expressed its concern the Hodgsons might amend their wrongful foreclosure complaint to join

23   Fidelity, invalidate the foreclosure sale, or seek to recover the surplus funds.  *Id.* Ex. B at 8.

24   Fidelity proposed to disburse the surplus to SBA in return for SBA's promise to indemnify

25   Fidelity if it were later required to return the surplus funds to the Hodgsons or EBI.  *Id.*  SBA

26   declined to pursue such an agreement.  *Id.* Ex. C, at 10.  On July 18, 2013, Fidelity sent a letter to

27   the Hodgsons and their counsel.  *Id.* Ex. D, at 12.  Fidelity requested the Hodgsons confirm they

28   sought only money damages in their wrongful foreclosure case and not to vacate the sale itself.

*Id.* Ex. D, at 13.  On July 29, 2013, Mr. Hodgson sent a fax informing Fidelity that "any action taken [at the time of the foreclosure sale] or resulting from those acts is not acceptable to or approved by my wife Linda or me." *Id.* Ex. E, at 14.  Fidelity also received a letter from Allan Frumkin, the Hodgsons' former attorney. *Id.* Ex. F, at 17.  In the letter Mr. Frumkin informed Fidelity he was a judgment creditor of the Hodgsons and claimed a right to any funds to be distributed to them. *Id.*

Fidelity forwarded Mr. Hodgson's fax to the SBA on August 1, 2013 and affirmed its intent to file an interpleader. *Id.* Ex. G, at 20.  Fidelity filed an interpleader in Placer County Superior Court on August 13, 2013, nine months after the foreclosure sale, and deposited the surplus funds with that court the next day.  Mem. 2; SBA Opp'n 3.  The funds remain on deposit. Decl. 4.  SBA removed the interpleader to this court on September 30, 2013.  SBA Opp'n 3.  The Hodgsons filed counterclaims against Fidelity, EBI, Bank of the West, and others on May 13, 2014.  Mem. 4.  Fidelity attempted to negotiate a stipulated discharge, but the Hodgsons did not agree to the stipulation.  Decl. 5-6.

Fidelity filed this motion on August 21, 2014, seeking "discharge . . . of all liability arising out of the handling of surplus funds . . ." and "$20,440.66 (should there be no opposition) or $21,003.16 (should there be an opposition)."  Mot. 2.  Bank of the West does not oppose the motion "so long as any award of fees or costs is paid from the interpled funds."  Bank of the West Opp'n 2, ECF No. 115.  EBI does not oppose Fidelity's request for discharge, but requests the court (1) order the surplus funds remain with Placer County Superior Court until resolution of the Hodgsons' claims and (2) postpone consideration of Fidelity's request for fees until the Hodgsons' claims are resolved.  EBI Opp'n 1-2, ECF No. 116.  The SBA opposes Fidelity's motion, contending (1) Fidelity was not a disinterested stakeholder, (2) the SBA is entitled to the interpleaded funds, (3) Fidelity breached its duties as trustee, and (4) Fidelity is not entitled to attorneys' fees or costs.  SBA Opp'n 5-8.  The SBA does not directly oppose Fidelity's motion for discharge.  The Hodgsons oppose Fidelity's discharge, the award of any fees or costs, and the interpleader in total.  Hodgson Opp'n 2, ECF No. 118.

1    II.    DISCUSSION

2          A.    <u>Motion for Discharge</u>

3          Rule 22 allows a party to file a claim in interpleader given the "possibility of

4    exposure to double or multiple liability." *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th

5    Cir. 2012).  Interpleader allows a stakeholder to protect itself when it faces more than one claim

6    to a single fund.  *Id.* (quoting *Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010)).

7    Interpleader is meant to "prevent[] the stakeholder from being obliged to determine at his peril

8    which claimant has the better claim."  *Id.* (quoting 7 CHARLES A. WRIGHT ET AL., FED. PRACT. &

9    PROC. § 1702 (3d ed.)).

10          In an interpleader action, the district court first decides whether the requirements

11   of Rule 22 have been met, and then the court evaluates the defendants' claims to the single fund.

12   *Mack*, 619 F.3d at 1023-24 (quoting *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999)).  The

13   SBA removed this case based on 28 U.S.C. § 1444,[1] so the requirements of Rule 22 apply.  Not.

14   of Removal 1, ECF No. 1.  Interpleader is proper if "there is a single fund at issue" and if "there

15   are adverse claimants to that fund."  *Lee*, 688 F.3d at 1009; FED. R. CIV. P. 22(a)(1).

16          The requirement for an "adverse claimant" is not exacting.  Adverse claims may

17   be both actual and potential.  *Mack*, 619 F.3d at 1023 (quoting *Minn. Mut. Life Ins. Co. v. Ensley*,

18   174 F.3d 977, 980 (9th Cir. 1999)).  Claims need not be "bona fide," but interpleader plaintiffs

19   must file in good faith.  *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 893-94 (9th Cir.

20   2012).  "[A] stakeholder must have a good faith belief that there are or may be colorable

21   competing claims to the stake. This is not an onerous requirement." *Id.* (citing 4 JAMES WM.

22   MOORE, MOORE'S FEDERAL PRACTICE § 22.03[1][c] (3d ed. 1997) ("[C]ourts appear to require

23   merely that the stakeholder's concern in this regard be more than conjectural.").  Fear of multiple

24   liability need only be "real and reasonable."  *Id.*  Inevitably some claims will be meritless, but this

---

25   [1] "Any action brought under section 2410 of this title against the United States in any State court
26   may be removed by the United States to the district court of the United States for the district and
     division in which the action is pending."  28 U.S.C. § 1444.  Section 2410 of Title 28 describes,
27   among other actions, "any civil action or suit in any district court, or in any State court having
     jurisdiction of the subject matter . . . of interpleader or in the nature of interpleader with respect
28   to, real or personal property on which the United States has or claims a mortgage or other lien."

1    determination "is the very purpose of the proceeding." *Id.* (quoting *Aaron v. Mahl*, 550 F.3d 659,

2    663 (7th Cir. 2008)).  Interpleader could hardly protect a stakeholder or "do[] justice

3    expeditiously" if the action crumbled at one claimant's assertion that another's claim lacked

4    merit. *Id.*

5           At issue here are the surplus funds from the foreclosure sale.  The adverse

6    claimants include the SBA, the Hodgsons, and Mr. Frumkin.  Interpleader is proper.  This

7    conclusion withstands the SBA's argument that Fidelity had a statutory duty to disburse funds to

8    it.  SBA Opp'n 6.  Fidelity was not required to evaluate the relative strengths of the claims it

9    faced.  *See Michelman*, 685 F.3d at 894 (quoting *N.Y. Life Ins. Co. v. Welch*, 297 F.2d 787, 790

10   (D.C. Cir. 1961) ("A stakeholder, acting in good faith, may maintain a suit in interpleader . . .

11   even though he believes only one of them is meritorious.")).  Neither do the claims' disparate

12   origins disqualify them. FED. R. CIV. P. 22(a)(1)(A).

13          It is true interpleader has equitable roots, and federal courts from time to time find

14   interpleader is improper when it would "reward inequitable or improper conduct." WRIGHT,

15   *supra*, § 1709.  Interpleader may be inappropriate if a claimant asserts laches, *see U.S. Fire Ins.*

16   *Co. v. Asbestospray, Inc.*, 182 F.3d 201, 208 (3d Cir. 1999), or unclean hands, *see Farmers*

17   *Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988).  To prove laches, a

18   claimant must show unreasonable delay and prejudice.  *Evergreen Safety Council v. RSA Network*

19   *Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012); *U.S. Fire*, 182 F.3d at 208.  Fidelity's interpleader was

20   nine months in the making, *see* SBA Opp'n 2, but this delay was reasonable given the Hodgsons'

21   bankruptcy litigation.  Fidelity had also engaged the SBA in negotiations.  Decl. Ex. B at 8.

22          Likewise, an argument that Fidelity somehow caused the dispute it now attempts

23   to sidestep does not fit the facts of this case.  The circumstances of the foreclosure sale suggest

24   Fidelity did not purposefully violate the automatic stay, as the Hodgsons claim.  Hodgsons'

25   Opp'n 3-5.  The Nevada case had been dismissed the same day, the California case filed the day

26   before, and the California stay was later annulled.  RJN 4-6.  The Hodgsons may maintain their

27   counterclaims against Fidelity, but not as an interpleader-plaintiff.

28

1    Fidelity faces multiple claims to the surplus proceeds.  It does not claim an interest

2  in the funds.  It wishes to avoid the risks it would face were it to determine alone who has the best

3  claim.  Fidelity's motion for discharge in its capacity as interpleader plaintiff is granted.

4    B.    Motion for Attorneys' Fees and Costs

5    In general, a court may award fees and costs to a disinterested stakeholder.

6  *Gelfgren v. Republic National Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982).  "The amount of fees

7  to be awarded in an interpleader action is committed to the sound discretion of the district court."

8  *Trustees of Directors Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426,

9  *as amended on denial of reh'g*, 255 F.3d 661 (9th Cir. 2000) (citing *Schirmer Stevedoring Co. v.*

10  *Seaboard Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962)).  A court considering a motion

11  for attorneys' fees should recognize, however, that interpleader is meant to "promote early

12  litigation" and "prevent[] dissipation" of the contested funds.  *Id.*

13    The party claiming attorneys' fees bears the burden of establishing its entitlement

14  to the award.  *Tise*, 234 F.3d at 427.  The "traditional test" for awarding fees in an interpleader

15  action is "less rigorous" than the test used in other contexts.  *Sun Life Assur. Co. of Canada v.*

16  *Chan's Estate*, No. C-03-2205 SC, 2003 WL 22227881, at *3 (N.D. Cal. Sept. 22, 2003) (citing

17  *Powell Valley Bankshares, Inc. v. Wynn*, No. 2:01CV00079, 2002 WL 728348, at *2 (W.D.Va.,

18  Apr. 11, 2002)).  Attorneys' fees in an interpleader action are usually appropriate when "(1) the

19  party seeking fees is a disinterested stakeholder, (2) who had conceded liability, (3) has deposited

20  the disputed funds into court, and (4) has sought a discharge from liability." *Sun Life*, 2003 WL

21  22227881, at *3 (quoting *Septembertide Publ'g v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir.

22  1989)).  Fees are "properly limited" to those "incurred in filing the action and pursuing the

23  [stakeholder's] release from liability, *not* in litigating the merits of the adverse claimants'

24  positions." *Tise*, 234 F.3d at 426 (emphasis in original).  Examples of compensable fees include

25  for preparation of a complaint, for service of process on the claimants, and for preparing an order

26  for discharge and dismissal.  *Id.* at 426-27.  A court may take several factors into consideration

27  when determining the amount of a fee: (1) the complexity of the case; (2) unique services the

28  stakeholder provided; (3) the stakeholder's good faith and diligence; (4) "whether the services

1    rendered benefited the stakeholder"; and (5) "whether the claimants improperly protracted the

2    proceedings." WRIGHT, *supra* § 1719 (citations omitted).

3              Courts may deny a stakeholder's motions for fees if a substantial controversy

4    contaminates its relationship with the claimants.  *See, e.g.*, *Schirmer Stevedoring*, 306 F.2d at 194

5    (holding the stakeholder may be awarded attorneys' fees for filing the complaint, obtaining orders

6    against further prosecution, and preparing an accounting of amounts payable to it, but not for

7    "services that could only relate to the contested issues between [the stakeholder] and the

8    claimants"); *Ferber Co. v. Ondrick*, 310 F.2d 462, 466 (1st Cir. 1962) (holding the district court

9    had not abused its discretion when it awarded no attorneys' fees to a stakeholder when most of its

10   efforts were spent resisting a counterclaim as to which it was not disinterested.); *Hoover, Inc. v.*

11   *McCullough Indus., Inc.*, 351 F. Supp. 1023, 1031 (D. Ala. 1972) (limiting the fee award in light

12   of a contest between the interpleader plaintiff and the claimants over the correctness of the

13   amount deposited in an interpleader action).  In addition, if the stakeholder faces multiple claims

14   in the ordinary course of its business, some courts have declined to award it attorneys' fees. *See,*

15   *e.g.*, *Companion Life Ins. Co. v. Schaffer*, 442 F. Supp. 826, 830 (S.D.N.Y. 1977) (expressing an

16   inclination to deny an insurer's fee request because "[c]onflicting claims to the proceeds of a

17   policy are inevitable and normal risks of the insurance business").

18             Fidelity has employed separate counsel to represent it in its capacities as

19   interpleader-plaintiff and counter-defendant. Mem. 4.  Glenn Wechsler, representing Fidelity in

20   its capacity as interpleader-plaintiff, has submitted an itemized list of his fees and costs "related

21   solely to the Trustee's fees in connection with the Surplus Funds (and not as Counter-Defendant

22   in the Counterclaim)."  Decl. Ex. M.  The court has reviewed this list and finds the relatively

23   lengthy procedural history of this case and Fidelity's good faith effort to resolve the dispute

24   warrant a substantial award, but that the award should not include fees Fidelity incurred during

25   adversarial proceedings before and after the interpleader was filed.  The court finds that an award

26   of $11,500 appropriately reflects these considerations.  This award strikes a balance between the

27   divergent purposes of interpleader: encouraging early resolution of multiple claims and

28

                                              7

1    preserving the funds in dispute.  It also reflects the court's finding that Fidelity should not shift

2    the entirety of the foreseeable cost of its business as trustee in a foreclosure sale.

3             The court is mindful of EBI's request to postpone a fee award until resolution of

4    the counterclaims.  EBI Opp'n 1-2, ECF No. 116.  Courts occasionally defer assessment of

5    attorneys' fees until resolution of the claims.  *See, e.g.*, *Settlement Capital Corp. Inc. v. Pagan*,

6    No. CIV.A. 3:07-CV-1609-, 2009 WL 856466, at *2 (N.D. Tex. Mar. 30, 2009); *Fox & Grove,*

7    *Chartered v. Miller*, No. 88 C 3741, 1988 WL 135485, at *2 (N.D. Ill. Dec. 9, 1988);

8    *Pennsylvania Fire Ins. Co. v. Am. Airlines, Inc.*, 180 F. Supp. 239, 243 (E.D.N.Y. 1960).  *See*

9    *also* WRIGHT, *supra* § 1719.  A court has discretion to assess fees from the interpleaded funds, as

10   a cost to the losing claimant, or divide them among the claimants.  *Schirmer Stevedoring*, 306

11   F.2d at 195.  The court therefore defers its determination of the allocation of the fee award until

12   resolution of the counterclaims.

13   III.    CONCLUSION

14            For the foregoing reasons, the court:

15   (1)      GRANTS the plaintiff's motion for discharge of trustee, and

16   (2)      GRANTS the plaintiff's motion for attorneys' fees and costs in the amount of

17            $11,500 but DEFERS assessment and allocation of the fees and costs until

18            resolution of the counterclaims.

19            IT IS SO ORDERED.

20   DATED:  November 12, 2014.

22                                                 _____

23                                                 UNITED STATES DISTRICT JUDGE