UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| FIDELITY NATIONAL TITLE COMPANY, | No. 2:13-cv-02030-KJM-AC |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| U.S. SMALL BUSINESS ADMINISTRATION, et al., | |
| Defendants. | |
| AND RELATED COUNTER/CROSSCLAIMS | |

This case began after East Bay Investors, LLC (EBI) submitted the highest bid in the sale of real property near Lake Tahoe. Fredrick and Linda Hodgson are the former owners of a motel on that property, the Falcon Lodge, and by counterclaim asserted in this action, they seek essentially to undo the sale. The Hodgsons' notice of *lis pendens* currently clouds the title of the former Falcon Lodge, and EBI moved to expunge it. After reviewing the parties' briefing, the court took the matter under submission without holding a hearing and now grants the motion.

I.   INTRODUCTION AND LEGAL STANDARD

*Lis pendens*, literally "pending lawsuit," is common shorthand for a recorded notice that real property is the subject of pending litigation; for all practical purposes it prevents

1

any transfer until the litigation is resolved or the notice is expunged. *BGJ Assocs., LLC v. Super. Ct. of L.A.*, 75 Cal. App. 4th 952, 966–67 (1999); Cal. Civ. Proc. Code § 405.24. State law provides the rule of decision should a party move to expunge the notice. *See* 28 U.S.C. § 1964; Cal. Civ. Proc. Code § 405.5; *see also Rodrigues v. F.D.I.C.*, No. 12-1243, 2012 WL 1945497, at *6 (N.D. Cal. May 30, 2012).

The California Code of Civil Procedure includes provisions for the recording and expunging of a notice of the pendency of an action. Section 405.20 allows "[a] party to an action who asserts a real property claim" to "record a notice of pendency of action in which that real property claim is alleged." But "[a]t any time" after that notice is recorded, any other party with an interest in the target real property "may apply to the court in which the action is pending to expunge the notice." Cal. Civ. Proc. Code § 405.30. The notice must be expunged if either (a) the party who filed the notice does not assert a real property claim or (b) "the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." *Id.* §§ 405.31, 405.32. "Probable validity . . . means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." *Id.* § 405.3. The party who recorded the notice—the party who opposes the motion—bears the burden of proof. *Id.* § 405.30. The court may consider "[e]vidence or declarations" filed with the motion to expunge, may conduct a hearing on the matter, and may "make any orders it deems just to provide for discovery by any party affected by a motion to expunge the notice." *Id.*; *see also Hunting World, Inc. v. Super. Ct. of S.F.*, 22 Cal. App. 4th 67, 70–71 (1994) (summarizing relevant statutes).

Here, the Hodgsons are the claimants, the parties who recorded the notice and who filed the counterclaim. On this motion they bear the burden to prove at least one of their claims is both a real property claim and is more likely than not to result in a judgment in their favor.

II.  BACKGROUND

    A.  Factual Background

Bank of the West (BW) made a business loan to Fredrick and Linda Hodgson in July 2000. Wilson Decl. ¶¶ 2–3, ECF No. 167-7; *id.* Ex. A. The loan included a promissory note

with a principal amount of $820,000, *id.* ¶ 4; *id.* Ex. B, and was secured by a deed of trust to 8258 North Lake Tahoe Blvd., Kings Beach, California, 96143 (the property, Falcon Lodge), *id.* ¶ 5; *id.* Ex. C. In broad strokes, the Hodgsons received a loan in the principal amount and agreed to make interest payments to BW; should they default, for example by missing payments, BW had the right to record a notice of default and sell the property at public auction. *See id.* Ex. C, at 6–7. The Deed of Trust included several provisions describing the Hodgsons' obligations. *See id.* Ex. C, at 3–4. Among these were duties to "maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value"; to avoid "any nuisance . . . or waste on or to the Property or any portion of the Property"; and to "comply with all laws, ordinances, and regulations . . . of all governmental authorities applicable to the use or occupancy of the Property." *Id.*

In August 2010, BW sent the Hodgsons a letter declaring their loan was in default. *Id.* Ex. H. According to that letter, the Hodgsons had missed payments and had not provided BW with current financial information. *Id.* About six months later, the Hodgsons entered a forbearance agreement with BW to temporarily reduce their monthly payments. *Id.* ¶ 13; *id.* Ex. J. Under that agreement, if the Hodgsons defaulted again, the interest rate would revert to the rate described in the original loan documents, the entire balance would immediately become due and payable, and BW would be entitled to foreclose on the property. *Id.* Ex. J, at 4–5.

On November 30, 2011, BW sent the Hodgsons a letter again declaring their loan in default after missed monthly payments, Wilson Decl. ¶¶ 14–15; *id.* Ex. K, but the Hodgsons never made a payment to BW after August 2011, *id.* ¶¶ 14, 16. In March 2012, BW sold the loan to EBI for about $400,000. *See id.* ¶¶ 18–25; *id.* Exs. L–P (purchase and sale documentation). The same month, EBI sent a letter to the Hodgsons to inform them EBI had purchased their loan, the forbearance period had ended, and payment was due at the original rate until the default was cured. Rogers Decl. ¶¶ 20–23, ECF No. 167-9; *id.* Ex. N. In April 2012 the Hodgsons made payments required by the forbearance agreement, but EBI rejected those payments because "the Forbearance Period and the modification ended and the original terms . . . were restored." Rogers Decl. Ex. Q, at 3; *see also id.* Ex. S (rejecting another attempted payment for similar reasons).

EBI recorded a notice of default on May 16, 2012. *Id.* ¶ 31; *id.* Ex. T. The notice listed various failures to perform duties under the deed of trust, including making payments when due, paying property taxes, paying fees and expenses to EBI, and "maintain[ing] the property as described in the deed of trust." *Id.* Ex. T, at 4. The notice of default reported amounts due equal to $52,795.03 as of April 10, 2012, which amount would increase, and instructed the Hodgsons to contact EBI to "find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason." *Id.* Ex. T, at 2–3. The Hodgsons slipped a $60,000 cashier's check under EBI's door on June 8, 2012, but the amount they owed in June had grown to at least $63,002.57, so EBI returned the check with a letter stating EBI's belief "[i]t does not look like you will cure these defaults any time soon" in light of "non-curable non-monetary defaults." *Id.* ¶¶ 32–33; *id.* Ex. U. The Hodgsons' attorney then requested EBI compute the amount necessary to cure the default, *id.* Ex. V, and EBI responded, but affirmed its belief the Hodgsons would not be able to cure certain other non-monetary defaults, *id.* Ex. W. These non-monetary defaults included "[f]ailure to pay necessary expenses to keep the Property operational," "[f]ailure to maintain and repair the Property to preserve its value," and failure to address Placer County's order finding the property a nuisance. *Id.* at 3–4. Neither the Hodgsons nor their attorney responded to EBI's letter, *id.* ¶ 40, and EBI recorded a notice of trustee's sale on August 28, 2012, *id.* Ex. BB.

Fidelity National Title Company conducted a trustee's sale on November 16, 2012, and EBI purchased the property for $610,000.[1] *Id.* ¶ 48. At the time EBI purchased the property, the outstanding balance on the Hodgson's loan totaled $474,517.46. *Id.* Ex. DD, at 2. The property's sale price therefore exceeded the outstanding loan balance by $135,482.54. *Id.* After facing several demands for the $135,482.54 surplus, Fidelity filed a complaint in interpleader in state court on August 13, 2013. Notice of Removal Ex. A, ECF No. 1.

---

[1] As noted in previous orders, the trustee's sale was completed in the midst of a barrage of bankruptcy litigation. *See* Order Nov. 10, 2014, at 3 n.1, ECF No. 134; Order Nov. 13, 2014, at 2, ECF No. 135.

B.   Procedural History

As a preliminary matter, the court grants EBI's request for judicial notice of several state-court and bankruptcy-court filings. Each filing relates to this litigation and is a public document whose accuracy is not subject to reasonable dispute. *See* Fed. R. Evid. 201(b). By granting this request, however, the court does not assume the truth of any of these documents' contents, but only that each "says what it says." *Jacquett v. Sisto*, No. 06-2938, 2008 WL 1339362, at *1 (E.D. Cal. Apr. 9, 2008).

On January 25, 2013, the Hodgsons filed a complaint in Placer County Superior Court. They alleged a trust managed by Robert Ferrari was "using EBI" in an "attempt[] to steal the property . . . by buying the loan from Bank of the West and refusing [the Hodgsons'] payments to make the loan current." EBI Request J. Notice Ex. 16, ¶ 22, ECF No. 168-6 (capitalization altered). They recorded a notice of pendency of that action. Rogers Decl. Ex. EE. The case was removed to bankruptcy court, voluntarily dismissed, and the notice of pendency of action was expunged. EBI Request J. Notice Ex. 27, ECF No. 168-7.

In June 2013, EBI filed a complaint for unlawful detainer, *id.* Ex. 21, to which the Hodgsons generally demurred, *id.* Exs. 23, 24. The Hodgsons argued EBI had improperly classified the case as one of limited jurisdiction, because the case, brought under California Code of Civil Procedure § 1161a, "necessarily trie[d] the plaintiff's title to the property," and that property was worth more than $25,000. *Id.* Ex. 23, at 6. The clerk entered a possession-only default judgment of unlawful detainer in favor of EBI, which provided that EBI was "entitled to possession of the premises." *Id.* Ex. 24; *see* Cal. Civ. Proc. Code § 1169.[2]

On September 30, 2013, ECF No. 1, the United States Small Business Administration removed Fidelity's interpleader complaint to this court. Notice of Removal, ECF No. 1. On January 18, 2014, the Hodgsons filed a notice of pendency of action, the notice EBI

---

[2] That section provides, in part, "If, at the time appointed, any defendant served with a summons does not appear and defend, the clerk, upon written application of the plaintiff and proof of the service of summons and complaint, shall enter the default of any defendant so served, and, if requested by the plaintiff, immediately shall enter judgment for restitution of the premises and shall issue a writ of execution thereon." Cal. Code Civ. Proc. § 1169.

5

1  seeks to expunge by this motion.  ECF No. 22.  They filed a counterclaim on May 13, 2014 after
2  receiving leave of this court, Order May 12, 2014, ECF No. 32; Counterclaim, ECF No. 33.  The
3  Hodgsons amended their counterclaim on December 1, 2014, after the court granted EBI's motion
4  to dismiss the original in part.  Order Nov. 11, 2014, ECF No. 134; First Am. Counterclaim, ECF
5  No. 136.

As noted above, the Hodgsons must show at least one of the claims in their first amended counterclaim is a real property claim likely to be resolved in their favor.  EBI has pointed out two procedural defects in the Hodgsons' notice, one of which is dispositive.

III.   DISCUSSION

   A.   Service of Notice

"[N]o plaintiff has the right to ambush a property owner by surreptitiously recording a lis pendens." *Bergman v. Tobin*, No. 11-1866, 2012 WL 5471796, at *4 (E.D. Cal. Nov. 9, 2012), *report and recommendation adopted*, 2012 WL 6088293 (E.D. Cal. Dec. 6, 2012) (citing *Biddle v. Super. Ct. of Orange Cnty.*, 170 Cal. App. 3d 135, 137 (1985)).  A party who records a notice of a pending action must serve a copy of the notice on all "parties to whom the real property claim is adverse and to all owners of record of the real property affected by the real property claim."  Cal Civ. Proc. Code § 405.22.  The state court of appeal has cautioned against "slavish adherence to the technical requirements of service," as long as "actual notice" is achieved.  *Biddle*, 170 Cal. App. 3d at 138.  In light of EBI's delay in raising this defect and its actual notice of this litigation, the court declines to grant its motion on this basis.

   B.   Leave to File a Successive Notice

As described above, the *lis pendens* at issue here is the second the Hodgsons have recorded.  "Once a notice of pending action has been expunged, the claimant may not record another notice of pending action as to the affected property without leave of the court in which the action is pending."  Cal. Civ. Proc. Code § 405.36.  The statute may allow for some lenience.  *See Rebco Development, Inc. v. Super. Ct.*, 67 Cal. App. 3d 13, 17–18 (1977).[3]  In *Rebco*, the

---

[3] The code comment attached to section 405.36 suggests the legislature meant to codify earlier decisional authority.  *See* Cal. Code Civ. Proc. § 405.36, code comment (citing *Ranchito*

6

court determined that because the issues in the first and second expungement hearings differed and the trial court had not considered these differences, and because the notices were filed in different actions between different parties, collateral estoppel did not bar the second notice. *Id.* In a later decision, the court of appeal distinguished *Rebco* and held that a party could not "record, at will, a second notice of *lis pendens* after the first had been expunged" because this "tactic" would "interfere[ ] with the status established by the court's order." *Ranchito Ownership Co. v. Super. Ct.*, 130 Cal. App. 3d 764, 771 (1982).

Here, the Hodgsons recorded their first notice after filing a state court action against EBI. *See* Rogers Decl. Ex. EE; EBI Request J. Notice Ex. 16. As noted above, they alleged EBI was part of a conspiracy to deprive them of the property and alleged breach of contract, fraud, intentional infliction of emotional distress, negligent misrepresentation, violations of Business and Professional Code section 17200, *et seq.*, and wrongful foreclosure. *Id.* They voluntarily dismissed the case and the notice of *lis pendens* was expunged. *Id.* EBI Request J. Notice Ex. 27. Although these actions were initiated in separate courts, the Hodgsons' claims in each are similar. Moreover, in both this and the previous case, the Hodgsons are the plaintiffs, EBI is a defendant, and the action concerns the same property. The plain language of section 405.36 leaves little doubt it applies here: once the previous notice was expunged, the Hodgsons could not "record another notice of a pending action as to the [Falcon Lodge] without leave of [this court,] the court in which the action is pending." Cal. Code Civ. Proc. § 405.36.

The Hodgsons' attempt to distinguish this action from the previous bankruptcy case misses the mark. The bankruptcy case was terminated by their voluntary dismissal and was no longer pending, so the outstanding notice should naturally have been expunged. Because their dismissal was without prejudice, however, they were permitted to pursue their claims in a later litigation, for example, by their current counterclaim. For that reason, this case is effectively the same case as the bankruptcy case, and they were required by section 405.36 to request leave

---

*Ownership Co. v. Super. Ct.*, 130 Cal. App. 3d 764 (1982), in turn citing *Rebco*, 67 Cal. App. 3d, at 17–18)).

before recording a new notice.  To hold otherwise would allow a plaintiff to sue, record a notice of pending action, voluntarily dismiss the claim without prejudice, and strategically burden their adversary with a new claim and new notice at will.  This is exactly the "abuse . . . the statute was intended to cure." *Ranchito*, 130 Cal. App. 3d at 771.

Because the Hodgsons' notice is procedurally defective, the court need not reach the probable validity of their claims.

IV. CONCLUSION

The motion is GRANTED.  The Notice of Pendency of Action recorded in the Placer County Recorder's Office on January 21, 2014, by Fredrick and Linda Hodgson for 8258 North Lake Tahoe Blvd., Kings Beach, California, 96143, document number 2014-0003970-00, is EXPUNGED.  This order disposes of ECF No. 167.

IT IS SO ORDERED.

DATED: November 12, 2015.

_____
UNITED STATES DISTRICT JUDGE