1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  FIDELITY NATIONAL TITLE                     No.  2:13-cv-02030-KJM-AC
    COMPANY,
12
                        Plaintiff,
13                                              ORDER
             v.
14
    U.S. SMALL BUSINESS
15  ADMINISTRATION, et al.,

16                      Defendants.

17  ─────────────────────────────────

18  AND RELATED COUNTERCLAIMS

19          The matter is before the court on the Motion for Determination of Good Faith

20  Settlement and Order Barring Indemnity Claims brought by counterdefendants John C. Rogers,

21  John C. Rogers, P.C., Incline Law Group, East Bay Investors, LLC (EBI), Ferrari Investment,

22  LLC, David Ferrari and Robert Ferrari.[1]  *See generally* Mot., ECF No. 214; Mem. P. & A., ECF

23  No. 214-1.  Fidelity National Title Company (Fidelity) opposes the motion in part.  Opp'n, ECF

24  No. 215.  Counterdefendants have replied.  Reply, ECF No. 216.  As requested by the court, the

25  moving counterdefendants filed a supplemental brief in support of the motion regarding the

26  applicable law.  ECF No. 222.

27  ─────────────────
            [1] For the limited purpose of this order, references to "counterdefendants" do not include
28  Fidelity.

                                              1

1    For reasons explained below, the court GRANTS counterdefendants' motion.

2    I.    FACTUAL AND PROCEDURAL BACKGROUND

3    As the court has considered prior motions in this case, and in so doing provided a

4    full factual summary, a complete review of the facts is unnecessary here. *See* Order filed Nov.

5    13, 2015, ECF No. 190 at 2–4. Only facts and procedural history relevant here are covered

6    below.

7    Bank of the West (BOW) made a business loan to Fredrick and Linda Hodgson in

8    2000, secured by the property located at 8258 North Lake Tahoe Boulevard, Kings Beach,

9    California, on which was located a motel called the Falcon Lodge (the Property). *Id.* at 2; First

10   Amended Counterclaim, ECF No. 136. In August 2010, BOW sent the Hodgsons a letter

11   declaring their loan was in default. 2015 Order at 3. Six months later, the Hodgsons entered into

12   a forbearance agreement with BOW to temporarily reduce their monthly payment. *Id.* In

13   November 2011, BOW sent the Hodgsons another letter, informing them that they were once

14   again in default after missing monthly payments. *Id.* Subsequently, BOW sold the Hodgsons'

15   loan to EBI. *Id.* EBI sent a letter to the Hodgsons the same month, notifying them of the

16   purchase by EBI from BOW. *Id.* EBI's letter also stated that the forbearance period had ended,

17   and payment was due at the original rate until the default was cured as provided for by the

18   original forbearance agreement with BOW. *Id.* In response, the Hodgsons made two attempts at

19   providing the payments. *Id.* at 3–4. EBI rejected both payments, reasoning that neither

20   payment's amount was sufficient to cure the default on its own. *Id.* The Hodgsons' counsel

21   thereafter requested that EBI compute the amount necessary to cure the default. *Id.* at 4. EBI

22   identified the amount as requested in a letter, but the Hodgsons never responded to that letter. *Id.*

23   In 2012, EBI recorded a notice of trustee's sale later and purchased the Property in

24   a trustee's sale conducted by Fidelity. *Id.* The Property's sale price exceeded the outstanding

25   loan balance by $135, 482.54. *Id.* In response to several demands on the $135, 482.54 surplus,

26   made by the U. S. Small Business Administration (SBA), the Hodgsons' former attorney Allan R.

27   Frumkin, and the Hodgsons, Fidelity filed a complaint in interpleader in state court on August 13,

28   2013. *See generally* ECF No. 1. The SBA removed Fidelity's interpleader complaint to this

1   court. *Id.* The Hodgsons filed a counterclaim, which they later amended. ECF Nos. 33, 136.

2   This court convened a settlement conference on March 23, 2016, at the request of the parties; all

3   parties waived a conflict as to this court serving as a settlement judge. ECF No. 204. The case

4   did not settle, but the parties agreed to continue their discussions in an effort to settle. *Id.* On

5   April 1, 2016, the parties to the pending motion as well as Fidelity and the Hodgsons, filed a

6   notice of settlement with respect to the counterclaim. ECF No. 209. On April 14, 2016,

7   counterdefendants filed the pending motion as contemplated by the Agreement, which states that

8   the granting of the motion "is a condition precedent to the terms and conditions" of the

9   Agreement. Settlement Agreement, ECF No. 214-2 at 8.

10   II.      APPLICABLE LAW

11          Under California Code of Civil Procedure section 877.6, a court may discharge a

12   settling party from future liability in a case "in which it is alleged that two or more parties are

13   joint tortfeasors or co-obligors on a contract debt" based on "a hearing on the issue of the good

14   faith" of the settlement. Cal. Code Civ. Pro. § 877.6(a)(1). "A determination by the court that the

15   settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any

16   further claims against the settling tortfeasor or co-obligor for equitable comparative contribution,

17   or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal.

18   Code Civ. Pro. § 877.6(c).

19          The threshold issue here is which claims within the counterclaim are covered by

20   section 877.6, given that counterplaintiffs' First Amended Counterclaim contains both federal and

21   state claims. Presently, the counterclaim alleges the following: (1) Cancellation of Instrument(s)

22   against Ferrari,[2] Rogers, Rogers, P.C., Incline Law Group, Ferrari Investments, EBI and Fidelity;

23   (2) Breach of Contract against Ferrari, Rogers, Rogers, P.C., Incline Law Group, Ferrari

24   Investments, and EBI; (3) Violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C.

25   § 1691 *et seq.* against Ferrari, Rogers, Rogers, P.C., Incline Law Group, Ferrari Investments, EBI

26   and Fidelity; (4) Elder Abuse, California Civil Code § 1575 against Ferrari, Rogers, Rogers P.C.,

27   ───────────────────

28   [2] Although the First Amended Counterclaim oscillates between "Ferrari" and "Ferraris,"
the allegations indicate the claims were asserted against both David and Robert Ferrari.

3

1   Incline Law Group, Ferrari Investments, EBI, BOW and Fidelity; (5) Elder Abuse and Dependent

2   Adult Civil Protection Act §§ 15600–15675 against Ferraris, Rogers, Rogers, P.C., Incline Law

3   Group, EBI, BOW and Fidelity; (6) California Business & Professions Code § 17200 against

4   Ferraris, Rogers, Rogers, P.C., Incline Law Group, BOW, EBI and Fidelity; (7) Negligence

5   against BOW; (8) Invasion of Privacy against BOW, Ferraris, Rogers, Rogers, P.C., Incline Law

6   Group and EBI; and (9) Fraudulent Conveyance against Ferraris, Rogers, Rogers, P.C., Incline

7   Law Group and EBI.

8          When a district court sits in diversity or hears state law claims based on

9   supplemental jurisdiction, the court applies state substantive law to the state law claims.  *Mason*

10  *and Dixon Intermodal, Inc. v. Lapmaster Intern, LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).

11  Thus, the court applies California law to resolve counterdefendants' motion with respect to

12  counterplaintiffs' state law claims.  Section 877.6, however, does not apply to counterplaintiffs'

13  claim under the ECOA, because it is a federal claim seeking specific statutory remedies, not a tort

14  claim.  *See* 15 U.S.C. § 1691e.

15  III.    DISCUSSION

16          A.    Good Faith Settlement and Bar of Indemnity Claims

17          First, the court determines whether the settlement parties engaged in good faith

18  settlement, and whether an order barring indemnity claims should be granted.  The merits of

19  counterdefendants' motion are unopposed.  *See* Opp'n at 2.

20          The Settlement Agreement was hammered out among the Hodgsons,

21  counterdefendants and Fidelity, despite the parties' disagreement over factual and legal issues.

22  As part of the Settlement Agreement, moving counterdefendants and Fidelity agree to pay a total

23  of $250,000.00 to the Hodgsons, and make other economic concessions in exchange for (a) a full

24  settlement and release by the Hodgsons of their counterclaim against the moving

25  counterdefendants and Fidelity, (b) dismissal with prejudice of each of the moving

26  counterdefendants and Fidelity from the counterclaim, and (c) a waiver by the Hodgsons, moving

27  counterdefendants and Fidelity of any rights to claim or recover attorneys' fees and/or costs

28  against one another in the counterclaim action.  Settlement Agreement at 9.

4

1    To determine whether a settlement is in good faith, a trial court must inquire

2  whether the amount of the settlement is within the reasonable range.  *See PacifiCare of Cal. v.*

3  *Bright Medical Assocs., Inc.*, 198 Cal. App. 4th 1451, 1464 (2011).  In determining whether a

4  settlement falls within a reasonable range, a court weighs the amount of the settlement in light of

5  (1) the rough approximation of the plaintiff's potential recovery and the settlor's proportionate

6  liability in view of the settlement amount; (2) a recognition that a settlor should pay less in

7  settlement than if found liable at trial; (3) financial conditions and insurance policy limits of the

8  settling defendants; and (4) any evidence or absence of evidence, of collusion, fraud or tortious

9  conduct between the settling parties aimed at making non-settling parties pay more than their fair

10  share.  *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499–500 (1985).  One of

11  the most important *Tech-Bilt* Factors is the proportion of liability.  *Toyota Motor Sales U.S.A.,*

12  *Inc. v. Superior Court*, 220 Cal. App. 3d 864, 871 (1990).  A "settlement figure must not be

13  grossly disproportionate to what a reasonable person, at the time of the settlement would estimate

14  the settling defendant's liability to be."  *Torres v. Union Pac R.R. Co.*, 157 Cal. App. 3d 499, 509

15  (1984).  The third and fourth factors are not at issue here, as none of the settling parties disputes

16  the financial conditions or insurance policy limits of moving counterdefendants and Fidelity, and

17  there are no non-settling parties.

18    In terms of the first and second factors, counterdefendants deny liability in the face

19  of all claims in counterplaintiffs' counterclaim.  Mot. at 11.  They argue their defenses to the

20  counterclaim are well-founded.  *Id.*  Under the Settlement Agreement, counterdefendants have

21  agreed to, and are required to, pay more than the maximum amount counterplaintiffs would likely

22  have recovered at trial on the state law claims.  At the time of the Hodgsons' second bankruptcy

23  petition, the Property was subject to two mortgages totaling at least $715,000.00, with

24  $474,517.46 owed under the BOW/EBI loan, and approximately $242,000.00 owed under an

25  SBA loan.  Using the estimates identified in a July 2011 appraisal of a disposition value of

26  $715,000.00 and an as-is value of $950,000.00, counterplaintiffs stood to recover between $0 and

27

28

1    $235,000.00 at trial.[3]  Cofer Decl. ¶¶ 6–7 & Exs. B-4, B-6, C-4 and C-5.  Both values would net

2    less to counterplaintiffs than the $250,000 counterdefendants and Fidelity have agreed to pay in

3    the Settlement Agreement.  Counterplaintiffs in fact provide no opposition to counterdefendants'

4    arguments or the 2011 valuation as a basis for estimating exposure.

5            Accordingly, the court finds the Settlement Agreement qualifies as a good faith

6    settlement and GRANTS counterdefendants' motion for good faith settlement.

7            Any and all claims for equitable indemnity or contribution against

8    counterdefendants shall be BARRED as provided by California Code of Civil Procedure

9    § 877.6(c).

10           B.    Fidelity's Attorneys' Fees and the Interpleader Funds

11           Fidelity has filed a limited opposition to counterdefendants' motion, seeking

12   clarification first as to how the Settlement Agreement addresses determination of the assessment

13   and allocation of the $11,500.00 attorneys' fee this court awarded to Fidelity in its order of

14   November 12, 2014, ECF No. 135.  *See* Opp'n at 2.  Second, Fidelity seeks clarification

15   regarding what the Settlement Agreement means for the interpleader funds deposited with the

16   state court.  If the court determines that Fidelity's attorneys' fees award should be paid from the

17   interpleader funds, then Fidelity requests the court remand this action back to Placer County

18   Superior Court so that court can compel payment to Fidelity in accordance with this court's 2014

19   Order.  *Id.* at 3; *see* 2014 Order, ECF No. 13.  Counterdefendants do not object to Fidelity's

20   requests for clarification, but argue that paragraph 10 of the Settlement Agreement specifically

21   provides that the agreement does not waive any rights, claims, and/or defenses as between

22   Fidelity and the Hodgsons in the interpleader action.  Cofer Decl., Ex. A ¶ 10 ("The Hodgsons

23   and Fidelity agree . . . [the Settlement Agreement] . . . do[es] not affect or extend to their rights,

24   claims, and/or defenses with respect to each other or any third parties in the [i]nterpleader

25   [a]ction.").

26

27           [3] Movants represent that disposition value assumes a 25-percent discount to market and
     that the property sells in ninety days.  As-is market value assumes twelve to eighteen months for
28   sale.  Mot. at 7.

1        Counterdefendants are correct in that the Agreement does not affect the Hodgsons'

2  or Fidelity's rights in the interpleader action.  This court has previously granted Fidelity's motion

3  for discharge of trustee and for attorneys' fees and costs in the amount of $11,500, but in doing so

4  it deferred the assessment and allocation of the fees and costs until resolution of the counterclaim.

5  2014 Order at 8.  In so doing, the court noted that "[a] court has discretion to assess fees from the

6  interpleaded funds, as a cost to the losing claimant, or divide them among the claimants." *Id.*

7  (citing *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 195 (9th Cir.

8  1962)).  However, as Fidelity aptly points out, the interpleader fund is currently deposited with

9  the Placer County Superior Court. *See* Opp'n at 3.  Fidelity is ORDERED to file a proposed

10  order to REMAND this action, or a portion thereof, to the Placer County Superior Court for the

11  limited purpose of compelling payment to it in accordance with the 2014 Order.

12  IV.     <u>CONCLUSION</u>

13        Counterdefendants' motion for determination of good faith settlement and order

14  barring indemnity claims is GRANTED.  Fidelity's request to remand is GRANTED subject to its

15  provision of a proposed order effecting remand.

16        IT IS SO ORDERED.

17   DATED:  June 15, 2016.

18

19  _____

20  UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28